FILED

2026 Jul-17  PM 02:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT 3



Phelps Dunbar LLP
Canal Place
365 Canal Street, Suite 2000
New Orleans, LA 70130
504 566 1311

June 14, 2024

27130-0081

Jay Russell Sever
Partner
Admitted in Louisiana
and California
severj@phelps.com
504 584 9271

Kenneth W. Boyles
kenneth.boyles@phelps.com
Direct 205 716 5251

**VIA ELECTRONIC MAIL AND CERTIFIED MAIL, RETURN RECIPT REQUESTED**
**TRACKING NO. 7022 3330 0001 7916 2820**

Mobile Fleet Specialists of Birmingham Inc.
c/o Mr. Robert R. Riley, Jr.
Riley & Jackson, P.C.
3530 Independence Dr.
Birmingham, Alabama 35209
rob@rileyjackson.com

> Re:   *Cameo Nicole Westmoreland, Individually and As Personal Representative And Administrator of the Estate of Joshua T. Westmoreland v. Jon's Tree Service, LLC, et al.,* Circuit Court of Jefferson County, Alabama (Case No. CV-2023-903604)
>
> Insured:   Mobile Fleet Specialists of Birmingham Inc.
> Policy:    MP0042018003723 (June 30, 2022 – June 30, 2023)
> DOL:       July 26, 2022
> Claim:     22385864

Dear Mr. Riley:

As previously shared, Phelps Dunbar LLP represents Mesa Underwriters Specialty Insurance Company ("MUSIC") in connection with the above-referenced claim and lawsuit styled *Cameo Nicole Westmoreland, Individually and As Personal Representative And Administrator of the Estate of Joshua T. Westmoreland v. Jon's Tree Service, LLC, et al.,* Circuit Court of Jefferson County, Alabama (Case No. CV-2023-903604) ("Lawsuit"). MUSIC issued policy number MP0042018003723 ("Policy") to Mobile Fleet Specialists of Birmingham Inc. ("Mobile Fleet") which, subject to certain terms, conditions, limitations, definitions, and exclusions, provides liability coverage for "garage operations" to insureds thereunder with a limit of $1,000,000 per "accident" for the policy period from June 30, 2022, to June 30, 2023. The purpose of this letter is to respond to your March 4, 2024 letter and to advise that subject to a complete reservation of all rights MUSIC has under the Policy and all applicable laws, MUSIC will agree to defend Mobile Fleet in the Lawsuit. The grounds for MUSIC's reservation of rights are further explained below.

Subject to a complete reservation of rights, MUSIC has retained Mr. Chris Zulanas of the law firm of Friedman, Dazzio & Zulanas, P.C. to defend Mobile Fleet for the claims made and damages sought against it in the Lawsuit. Mr. Zulanas may be contacted by telephone at 205-278-7050 or by email at czulanas@freidman-lawyers.com. MUSIC's agreement to defend Mobile

Mobile Fleet Specialists of Birmingham, Inc.
c/o Mr. Robert R. Riley, Jr.
June 14, 2024
Page 2

Fleet is without prejudice to its rights and defenses under the terms, conditions, limitations, definitions, and exclusions of the Policy and all applicable laws, all such rights and defenses being specifically reserved. By participating in Mobile Fleet's defense, MUSIC does not admit liability for coverage of the claim. Rather, MUSIC reserves its rights under the terms, conditions, limitations, definitions, and exclusions of the Policy based on the non-exclusive grounds discussed herein. Furthermore, MUSIC reserves its right to maintain a declaratory judgment action to determine MUSIC's rights and obligations under the Policy and to deny coverage for some or all claims made and damages sought in the Lawsuit. MUSIC also reserves the right to withdraw from the defense of Mobile Fleet at any time if it is later determined that no coverage is owed under the Policy for this matter or if coverage is exhausted.

MUSIC's current understanding of the facts is based on the allegations in the complaint filed in the Lawsuit, amendments thereto, and MUSIC's investigation to date. MUSIC understands that these allegations are unproven and may be untrue, incomplete, or embellished. MUSIC does not conclude that any allegation is true, and no statement in this letter should be construed otherwise. However, the allegations are relevant to this reservation of rights.

On October 9, 2023, Plaintiff Cameo Nicole Westmoreland, individually and as personal representative and administrator of the Estate of Joshua T. Westmoreland, ("Plaintiff") filed the Lawsuit against Jon's Tree Service, LLC ("Jon's") and MAR Properties, LLC ("MAR") asserting various claims styled as follows: Count I – Negligence/Wantonnes, Count II – Breach of Contract, and Count III - Failure to Warn. Plaintiff also asserted a claim for worker's compensation benefits against Jon's styled as Count IV – Worker's Compensation Act of Alabama and/or Employer's Liability Act.

Through the initial complaint, Plaintiff alleges that on or about July 26, 2022, Joshua T. Moreland ("Decedent") "was employed and/or contracted by" Jon's "as a landscaper's helper and was working at the vacant commercial building located at 3100– 9th Avenue North, Birmingham, Alabama." [Doc. 2 ¶ 5]. Plaintiff alleges that MAR "was the premises owner and acting as the general contractor for . . . [Jon's] and supervising the work being performed." [*Id.*]. Plaintiff further alleges that Jon's and/or MAR's failed to provide a safe work environment, which resulted in Decedent falling through a skylight at the subject property, and the "Defendants negligent, willful, reckless, and/or wanton conduct was a proximate cause of the death of . . . [D]ecedent." [*See* Doc. 2 ¶¶ 9, 11-14].[1] As a result, Plaintiff claims she is "entitled to receive pursuant to the Wrongful Death Act, benefits under the Workers' Compensation Act of Alabama, compensatory damages under the Employer Liability Act," and punitive damages and "demands judgment against Defendants, jointly and severally." [Doc. 2, p. 13].

On January 26, 2024, Plaintiff filed a "First Amendment to Complaint" adding Mobile Fleet as a defendant to Lawsuit and alleges as follows:

---

[1] Through Count II – Breach of Contract, Plaintiff alleges that Decedent "was a third-party beneficiary of an express or implied contract between" Jon's (his employer and/or contractor) and MAR, and his death "was caused as a proximate consequence of the breach of contract or other wrongful conduct of . . . MAR." [Compl. ¶¶ 16-17].

Mobile Fleet Specialists of Birmingham, Inc.
c/o Mr. Robert R. Riley, Jr.
June 14, 2024
Page 3

2. On or about January 7, 2022, Defendant **MOBILE FLEET**, leased the subject property where the accident occurred, 3100 – 9th Avenue North, Birmingham, Alabama 35203, from Defendant, **MAR PROPERTIES, LLC**. Defendant, **MOBILE FLEET**, proceeded to have improvements made to said location. Plaintiff's accident occurred on July 26, 2022, while **MOBILE FLEET** was in control of the subject property and operating its business there. It was also contracting improvement services to the location of the accident that it leased from Defendant, **MAR PROPERTIES, LLC**.

3. By adding Defendant, **MOBILE FLEET**, to Counts, I. II, and III, of Plaintiff's original Complaint[,] Plaintiff adopts and re-alleges each material averment of the original Complaint, as if set out herein.

[Doc. 53 ¶¶ 2-3].

Thereafter, on February 23, 2024, Plaintiff filed a "Second Amendment to Complaint" asserting various claims against the owner of Jon's. [Doc. 77]. While the "First Amendment to Complaint" purported to add Mobile Fleet as party to Count I – Negligence/Wantonnes, Count II – Breach of Contract, and Count III - Failure to Warn, the Second Amendment to Complaint alleges, in part, as follows:

1. By substituting Paragraph 10 in Plaintiff's Original Complaint to state the following:

10. From a procedural aspect, this suit is brought against **MAR and JON's,** pursuant to *Code of Ala. §§ 25-5-11 and 6-5-410*. Additionally, this suit is brought in the alternative (based on the unclear employment status of Joshua Westmoreland) against **JON'S** pursuant to the **Employer's Liability Act** as set out in *Code of Ala. § 25-6-1 (2005)* for the negligent and/or wanton acts outlined in Counts I, II, and III, set out herein.

[Doc. 77 ¶ 1].[2]

We refer below to certain provisions of the Policy that may be applicable based on information presently made available to MUSIC. Such reference is not intended to be a comprehensive recitation of the applicable Policy provisions, and additional provisions may apply to limit or restrict coverage. MUSIC reserves the right to assert Policy provisions and coverage defenses not discussed herein.

---

[2] The Second Amendment to Complaint further alleges as follows:

From a procedural aspect, this suit is brought against MAR, JON's and PIERCE, pursuant to Code of Ala. §§ 25-5-11 and/or 6-5-410. Additionally, this suit is brought in the alternative (based on the unclear employment status of Joshua Westmoreland) against JON'S pursuant to the Employer's Liability Act as set out in Code of Ala. § 25-6-1 (2005) for the negligent and/or wanton acts outlined in Counts I, II, and III, set out herein.

[Doc. 77 ¶ 40].

Mobile Fleet Specialists of Birmingham, Inc.
c/o Mr. Robert R. Riley, Jr.
June 14, 2024
Page 4

As stated above, MUSIC issued the Policy to Mobile Fleet for the effective policy period from June 30, 2022, to June 30, 2023. Subject to certain terms, conditions, limitations, definitions, and exclusions, the Policy's Garage Coverage Form provides a $1,000,000 limit of liability for "Each 'Accident' 'Garage Operations'" "Other Than 'Auto' Only." [MUS 01 01 7 0000 0515, p. 1 of 4; CA 00 05 03 10].

Pursuant to the "'Garage Operations' – Other Than Covered 'Autos'" Coverage ("Garage Operations Insuring Agreement") under Section II – Liability Coverage, MUSIC "will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies caused by an 'accident' and resulting from 'garage operations' other than the ownership, maintenance or use of covered 'autos.'" [CA 00 05 03 10, p. 2 of 17]. The Garage Operations Insuring Agreement further provides that MUSIC "ha[s] the right and duty to defend any 'insured' against a 'suit' asking for these damages. However, [MUSIC] ha[s] no duty to defend any 'insured' against a 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply." [CA 00 05 03 10, p. 2 of 17].[3]

Pertinent to the Garage Operations Insuring Agreement, "bodily injury" is defined as "physical injury, sickness, or disease sustained by a person including death resulting from any of these. 'Bodily injury' does not include emotional distress, mental anguish, humiliations, mental distress, mental injury, anxiety, inconvenience, depression, dissatisfaction, or shock to the nervous system or any similar injury, including physical manifestation of any of the forgoing, unless arising out of other underlying actual physical injury to that person" [MUSIC 01 01 70002 0919, p. 6 of 7].[4]

"Accident" is defined to "include[] continuous or repeated exposure to the same conditions resulting in 'bodily injury' or 'property damage.'" [CA 00 05 03 10, p. 2 of 17]. [5]

"Garage operations" is defined as follows:

**H.**    "Garage operations" means the ownership, maintenance or use of locations for garage business and that portion of the roads or other accesses that adjoin these locations. "Garage operations" includes the ownership, maintenance or use of the "autos" indicated in Section **I** of this coverage form as a covered "autos". "Garage operations" also include all operations necessary or incidental to a garage business.

[CA 00 05 03 10, p. 2 of 17].

---

[3]  Section II also provides coverage for "'Garage Operations' – Covered 'Autos.'" Because the claims made and damages sought in the Lawsuit do not involve a covered "auto," this coverage is not applicable.

[4]  The definition of "bodily injury," as contained in the Garage Coverage Form (CA 00 05 03 10, p. 15 of 17), is amended by the "Additional Exclusions and Provisions Garage Insurance" Endorsement. [MUSIC 01 01 70002 0919, p. 6 of 7].

[5]  The Lawsuit does not allege damages because of "property damage," which is defined as "damage to or loss of use of tangible property." [CA 00 05 03 10, p. 17 of 17].

Mobile Fleet Specialists of Birmingham, Inc.
c/o Mr. Robert R. Riley, Jr.
June 14, 2024
Page 5

Furthermore, the Policy's Schedule of Operations Endorsement limits the definition of "garage operations" and provides, in part, as follows:

In consideration of the premium charged it is agreed that the definition of "Garage Operations" includes ONLY the operation(s) listed below and there is no coverage for, "bodily injury", "property damage" or "loss" arising from operations, activities or events not listed.

"Garage Operations"

| Class Code | Description of Operations: |
|------------|---------------------------|
| 1929 | Heavy Truck Repair |

[MUS 01 01 70001 0216, p. 1 of 2].

As addressed above, the claims made and damages sought in the Lawsuit arise from the injuries and resulting death of Decedent, which were allegedly caused when he fell from a skylight while working "as a landscaper's helper" at the "vacant commercial building" located at or about 3100 9th Avenue North, Birmingham, Alabama 35203, which Mobile Fleet leased from MAR. Thus, the Lawsuit does not allege damages caused by an accident resulting from "garage operations" (*i.e.*, "Heavy Truck Repair").[6] Accordingly, MUSIC reserves its rights to the extent the Lawsuit does not seek damages resulting from "garage operations" as defined by the Policy's Garage Coverage Form and Schedule of Operations Endorsement or otherwise does not meet the requirements of the Garage Operations Insuring Agreement.

Even if the requirements of the Garage Operations Insuring Agreement of the Policy were satisfied, certain exclusions may apply to limit or preclude coverage for the claims made and damages sought against Mobile Fleet in the Lawsuit.

First, the Expected or Intended Injury exclusion precludes coverage for "'bodily injury' or 'property damage' expected or intended from the standpoint of the 'insured'." [CA 00 05 03 10, p. 4 of 17].[7] To the extent Plaintiff has asserted claims against Mobile Fleet based on its alleged willful or wanton conduct, the Expected or Intended Injury exclusion would apply to exclude or otherwise limit coverage. MUSIC reserves its rights pursuant to the Expected or Intended Injury exclusion.

Second, the Policy contains a Contractual exclusion, which precludes coverage for "[l]iability assumed under any contract or agreement." [*Id.*, p. 5 of 17]. However, this exclusion does not apply to liability for damages:

---

[6] Based upon information provided to MUSIC by or on behalf of Mobile Fleet, MUSIC also understands that at the time of the incident made the basis of the claim and the Lawsuit, Mobile Fleet was preparing and/or renovating the subject property and had not begun operating its business at the subject location.

[7] "But for 'garage operations' other than covered 'autos,' th[e Expected or Intended Injury] exclusion does not apply to 'bodily injury' resulting from the use of reasonable force to protect persons or property." [CA 00 050 03 10, p. 4 of 17].

Mobile Fleet Specialists of Birmingham, Inc.
c/o Mr. Robert R. Riley, Jr.
June 14, 2024
Page 6

    **a.** Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

    **b.** That the "insured" would have in the absence of the contract or agreement.

[*Id.*].[8]

Through Count II, Plaintiff alleges that Decedent "was a third-party beneficiary of an express or implied contract between . . . Jon's and Defendants," and "that the death of [Decedent] was caused as a proximate consequence of the breach of contract or other wrongful conduct of the Defendants . . .." [Doc 2. ¶¶ 16-17]. MUSIC, therefore, reserves its rights pursuant to the Contractual exclusion.

Third, the Policy contains a Punitive Damages Exclusion, which provides that "[t]his insurance does not apply to any fines, penalties, punitive damages, exemplary damages, treble damages or the multiplication to compensatory damages." [MUS 01 01 20063 09 19]. While this exclusion would not apply to preclude coverage for punitive damages sought pursuant to the Alabama Wrongful Death Act, to the extent Plaintiff seeks damages for her own alleged injuries or otherwise outside the confines of the Alabama Wrongful Death Act, MUSIC also reserves its rights pursuant to the Punitive Damages Exclusion.

Moreover, MUSIC is aware of a potential material misrepresentation in Mobile Fleet's policy application that may void coverage under the Policy from its issuance. Specifically, in Mobile Fleet's May 13, 2022-dated Garage Application, it represented that its garage operations were performed at only two locations: (1) 2525 Hwy 87, Alabaster, AL 35007 and (2) 800 3rd Ave. North, Birmingham, AL 35203. However, on or about January 7, 2022, Mobile Fleet entered into a commercial lease for the premises located at 3100 9th Avenue North, Birmingham, AL 35205-4551 with MAR, and MUSIC did not receive a request to add the subject property as a scheduled location to the Policy until August 23, 2022 – almost one month after the date in which the incident made the basis of the claim and Lawsuit occurred. Accordingly, MUSIC respectfully reserves all rights, including the right to initiate litigation to determine whether the Policy may be rescinded pursuant to the Policy's conditions and/or applicable laws including, but not limited to, Ala. Code § 27-14-7.

For the reasons explained above, the Policy may provide limited or no coverage for the claims made and damages sought against Mobile Fleet in the Lawsuit. As stated above, MUSIC reserves the right to withdraw from Mobile Fleet's defense if it is determined that no coverage is owed under the Policy. Furthermore, MUSIC has no obligation to indemnify Mobile Fleet or any other party for any portion of the claim not covered based on the Policy's terms, conditions, limitations, definitions, and exclusions. Therefore, Mobile Fleet may be personally liable for any uncovered claims. If it has not already done so, Mobile Fleet should put any other insurer that

---

[8] To the extent Mobile Fleet and/or MAR entered into a contract for tree service removal with Jon's, based on available information, it does not appear that any such contract would qualify as an "insured contract" as defined by the Policy. [*See* CA 00 05 03 10, p. 16 of 17, as amended by MUS 01 01 70002 0919, p. 6 of 7].

Mobile Fleet Specialists of Birmingham, Inc.
c/o Mr. Robert R. Riley, Jr.
June 14, 2024
Page 7


may provide coverage on notice of the Lawsuit as the failure to timely do so may forfeit any coverage that may have otherwise been available.

The foregoing is based solely on information available to MUSIC to date. MUSIC reserves the right to supplement the foregoing in the event additional information is developed or disclosed. Additional terms, conditions, limitations, definitions, and exclusions not discussed above may be deemed applicable and restrict or otherwise limit coverage under the Policies. MUSIC reserves the right to assert positions and defenses not discussed herein which may be discovered to be applicable. No waiver of the right to assert additional positions or defenses is intended, and such waiver is expressly denied. Any further action taken in connection with this matter should not be construed as an admission by MUSIC of coverage, nor should any actions be construed as a waiver of any rights of MUSIC to invoke the terms, conditions, limitations, and exclusions of the Policies, all of which actions taken on behalf of MUSIC are done entirely without prejudice.

Should Mobile Fleet or any representative on its behalf have any additional information that it believes should be considered or is inconsistent with MUSIC's understanding of the facts set forth herein, please immediately furnish such information to the undersigned.

Sincerely,

Jay Russell Sever

Kenneth W. Boyles


cc:     Mr. Chris Zulanas
        Friedman, Dazzio & Zulanas, P.C.
        czulanas@freidman-lawyers.com