FILED
2026 Jul-18 PM 04:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY,** | ) | |
| **Plaintiff,** | ) | **Case No: 2:25-cv-00659-MHH** |
| **v.** | ) | |
| **MOBILE FLEET SPECIALISTS OF BIRMINGHAM, INC. et al.,** | ) | |
| **Defendants.** | ) | |

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Mesa Underwriters Specialty Insurance Company ("MUSIC"), pursuant to Fed. R. Civ. P. 56, respectfully moves this Court to enter summary judgment in its favor on all claims against Defendants Mobile Fleet Specialists of Birmingham, Inc. ("Mobile Fleet") and Cameo Nicole Westmoreland ("Westmoreland"). As grounds for this Motion, MUSIC states as follows:

## INTRODUCTION

MUSIC issued garage policy number MP0042018003723 to Mobile Fleet effective for the period from June 30, 2022, to June 30, 2023 (the "Policy"). The Policy's Section II – Liability Coverage provides "Garage Operations" – Other Than Covered "Autos" coverage ("Garage Operations Coverage") for sums Mobile Fleet legally must pay as damages because of "bodily injury" caused by an "accident" and

resulting from "garage operations." The Policy's Schedule of Operations Endorsement specifically limits the definition of "garage operations" to include only "Heavy Truck Repair" operations and states that "there is no coverage for, 'bodily injury' . . . arising from operations, activities or events not listed."

The claims made and damages sought against Mobile Fleet in the lawsuits styled *Cameo Nicole Westmoreland v. Jon's Tree Services, LLC, et al*., pending in the Circuit Court of Jefferson County, Alabama (Case No. CV-2023-903604) and *Jon's Tree Services, LLC v. Cameo Nicole Westmoreland*, pending in the Circuit Court of Jefferson County, Alabama (Case No. CV-2024-000125) (collectively, the "Underlying Actions") do not arise from Mobile Fleet's heavy truck repair operations. Instead, Westmoreland alleges that Joshua Westmoreland ("Decedent") was employed and/or contracted by Jon's Tree Services, LLC ("Jon's Tree Services") as a landscaper's helper, and while working on the roof of a vacant commercial building leased by Mobile Fleet, he fell through an unguarded skylight, resulting in his tragic death. The claims against Mobile Fleet are based on its alleged negligent control of the premises, failure to provide fall protection, failure to warn, and breach of alleged contractual duties to provide, among other things, a safe work environment, all of which are wholly unrelated to Mobile Fleet's heavy truck repair operations.

After MUSIC filed the present action, Westmoreland, in an attempt to manufacture coverage, filed an Amended Consolidated Complaint ("Operative Complaint") alleging that Mobile Fleet had control of and use of the subject property for its garage operations business for heavy truck repair. However, Alabama law requires the Court to compare the policy to the factual allegations actually pleaded—not to coverage labels, conclusions, or policy phrases inserted into the complaint. The factual allegations of the Operative Complaint make clear that the claims made and damages sought against Mobile Fleet in the Underlying Actions do not arise from Mobile Fleet's heavy truck repair operations. Instead, the Operative Complaint alleges that Decedent was exposed to "fall hazards" while working on the "roof system" at the building. Thus, the requirements of the Policy's Garage Operations Coverage grant are not satisfied, and MUSIC is entitled to a declaration that it has no duty to defend or indemnify Mobile Fleet in the Underlying Actions.

Furthermore, because Mobile Fleet made material misrepresentations in its application, the Policy is void *ab initio*, and for this additional reason, MUSIC is entitled to summary judgment in its favor.

## <u>STATEMENT OF UNDISPUTED FACTS</u>

### A. The Subject Property and Policy Application

1. On or about January 7, 2022, Mobile Fleet, as lessee, and MAR Properties, LLC ("MAR"), as lessor, entered into a Commercial Lease ("Lease") for



PD.56478184.5

the premises located at 3100 9th Avenue North, Birmingham, AL 35205 (the "Subject Property"). A copy of the Lease is attached as Exhibit A.

2. On or about May 13, 2022, Mobile Fleet completed a Garage Application for insurance coverage. The Garage Application was signed by Jeffrey S. Osborn, an owner and vice president of Mobile Fleet. A copy of the Garage Application is attached as Exhibit B.

3. In completing the Garage Application, Mobile Fleet responded to a series of questions seeking material information regarding, among other things, Mobile Fleet's locations. *See* Exhibit B at 1.

4. In response, Mobile Fleet identified two locations: (1) 2525 Highway 87, Alabaster, AL 35007, and (2) 800 3rd Avenue North, Birmingham, AL 35203. *See* Exhibit B at 1.

**B. The Policy**

5. MUSIC issued the Policy to Mobile Fleet effective for the period from June 30, 2022 to June 30, 2023 (the "Policy"). A copy of the Policy is attached as Exhibit C.

6. The Policy's Garage Coverage Part Declarations ("Declarations") list Mobile Fleet as the only Named Insured and list Mobile Fleet's "Business Description" as "HEAVY TRUCK REPAIR." Ex. C, p. 2 of 97.

7. The Declarations list the two locations identified by Mobile Fleet in the Garage Application, and the 'LIABILITY COVERAGES – PREMIUMS' section lists premiums for those two locations. Ex. C, p. 10 of 97.

8. The Policy's Garage Coverage Form provides, in part, as follows:

> **SECTION II – LIABILITY COVERAGE**
>
> **A. Coverage**
>
> **1. "Garage Operations" – Other than Covered "Autos"**
>
> **a.** We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies caused by an "accident" and resulting from "garage operations" other than the ownership, maintenance or use of covered "autos".
>
> We have the right and duty to defend any "insured" against a "suit" asking for these damages. However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the applicable Liability Coverage Limit of Insurance – "Garage Operations" -- Other Than Covered "Autos" has been exhausted by payment of judgments or settlements.

Ex. C, p. 41 of 97.

9. The Policy defines "garage operations" as follows:

> **H.** "Garage operations" means the ownership, maintenance or use of locations for garage business and that portion of the roads or other accesses that adjoin these locations. "Garage operations" includes the ownership, maintenance or use of the "autos" indicated in Section **I** of this coverage form as covered "autos". "Garage operations" also include all operations necessary or incidental to a garage business.

Ex. C, p. 55 of 97.

10. The Policy's definition of "garage operations" is amended by the "Schedule of Operations Endorsement," which provides, in part, as follows:

> In consideration of the premium charged it is agreed that the definition of "Garage Operations" includes ONLY the operation(s) listed below and there is no coverage for "bodily injury," "property damage" or "loss" arising from operations, activities, or events not listed.
>
> "Garage Operations"

| Class Code | Description of Operations: |
|---|---|
| 1929 | Heavy Truck Repair |

Ex. C, p. 13 of 97.

**C. The Underlying Actions**

13. On October 9, 2023, Westmoreland, in her individual capacity and as Administrator of the Estate of Joshua T. Westmoreland, filed the lawsuit styled *Cameo Nicole Westmoreland v. Jon's Tree Services, LLC, et al.*, pending in the Circuit Court of Jefferson County, Alabama (Case No. CV-2023-903604). A copy of the Complaint is attached as Exhibit D.

14. On July 19, 2024, Westmoreland filed an "Answer, Counterclaim, and Third-Party Complaint" in the lawsuit styled *Jon's Tree Services, LLC v. Cameo Nicole Westmoreland*, pending in the Circuit Court of Jefferson County, Alabama (Case No. CV-2024-000125). A copy of the Answer, Counterclaim and Third Party Complaint is attached as Exhibit E.

15. On January 1, 2025, Westmoreland filed a "Consolidated Complaint" in the Underlying Actions against Mobile Fleet and others. [Doc. 1-1].

16. Thereafter, on July 10, 2025, Westmoreland filed an Amended Consolidated Complaint (the "Operative Complaint"), which is the operative pleading in the Underlying Actions. A copy of the Operative Complaint is attached as Exhibit F.

17. The Operative Complaint alleges that "[o]n or about July 26, 2022, . . . [D]ecedent . . . was engaged, employed, and/or contracted by . . . Jon's [Tree Services] as a landscaper's helper and was working at [a] vacant commercial building located at 3100 [] 9th Avenue North, Birmingham, Alabama." Ex. F ¶ 8.

18. The Operative Complaint alleges that Mobile Fleet "had control and use of the premises for its garage operations business for heavy truck repair and . . . also had control as a general contractor for the sub-contractor . . . Jon's [Tree Services], and [was] supervising the work being performed at [the Subject Property]." Ex. F ¶ 8.

19. The Operative Complaint alleges that Mobile Fleet "was in the process of conducting maintenance and improvements to said location when the fall [(the incident made the basis of the Underlying Actions)] occurred"; and "was acting as a general contractor making improvement services to the location of the accident that it leased from [MAR]." Ex. F ¶¶ 8-9.

20. It further alleges, in part, as follows:

> 10. On or about July 26, 2022, employees and/or agents of the Defendants, **MAR, MOBILE FLEET,** and **JON[]'S** negligently and/or wantonly failed to provide fall protection and critical information about the latent dangers on the premises to Plaintiff's decedent, **WESTMORELAND**. Plaintiff's decedent was exposed to fall hazards while working on the roof system at the commercial building located [at] 3100 – 9th Avenue North, Birmingham, Alabama. Plaintiff's decedent was not protected from falls, exposing him to a fall of over 30 feet.
>
> 11. Specifically, Plaintiff's decedent was not protected from falling through skylights. The skylights were not covered or barricaded in any way. Also, no restraint or retention devices were provided. The Defendants negligently and/or wantonly failed to protect the skylights and failed to develop, implement, and/or maintain at the workplace an adequate hazard recognition and communication program. The improperly protected skylight and/or other safety problems were not corrected on or before July 26, 2022, the time of the subject incident. As a result, on July 26, 2022, Plaintiff's decedent, **WESTMORELAND**, fell through a skylight over 30 feet to his death. He was twenty-seven years old at the time of his death and left a wife and two minor children.

Ex. F ¶¶ 10-11.

21. Through Count I, Westmoreland has asserted a claim styled as "Negligence and/or Wantonness" alleging, in part, that Mobile Fleet "negligently

and/or wantonly failed to provide a safe workplace for all employees, contractors[,] licensees[,] and invitees who could be on the roof of the workplace, including [Decedent].” Ex. F ¶ 15.

22. Count I of the Operative Complaint further alleges, in part, as follows:

> [D]ecedent was not warned about nor protected from falls, exposing him to a fall of over 30 feet. Specifically, . . . [D]ecedent was not protected from falling through skylights. The skylights were not covered or barricaded in any way. Also, no restraint or retention devices were provided. [Mobile Fleet and others] negligently and/or wantonly failed to protect the skylights and failed to develop, implement, and/or maintain at the workplace an adequate hazard recognition and communication program. The improperly protected skylight and/or other safety problems were not corrected on or before July 26, 2022, the time of the subject incident.

Ex. F ¶ 15.

23. Westmoreland has also asserted claims styled as Count II – Breach of Contract and Count III – Failure to Warn against Mobile Fleet. Ex. F, pp. 8-9.

24. Furthermore, in verified discovery responses, Mobile Fleet has stated, among other things, that it “had not moved into the building located at 3100 – 9th Avenue North, Birmingham, Alabama . . . as of the date of the accident and had only recently entered into a lease for the building.” A copy of Mobile Fleet’s verified Objections and Responses to Westmoreland’s First Interrogatories and Request for Production is attached as Ex. G. Ex. G at p. 7 of 33.

## STANDARD OF REVIEW

The Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The movant can meet this burden by presenting evidence that no dispute of material fact exists, or by showing that the nonmoving party has failed to present evidence in support of an element on which it bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## ARGUMENT

### I. The Requirements of the Policy's Garage Operations Coverage Are Not Satisfied

Under Alabama law, an insurer's duty to defend is determined by comparing the allegations in the underlying complaint with the terms of the insurance policy. *Hartford Cas. Ins. Co. v. Merchs. & Farmers Bank*, 928 So. 2d 1006, 1009 (Ala. 2006). The duty to defend is broader than the duty to indemnify, and if the complaint alleges facts that potentially or arguably bring the claims within the policy's coverage, the insurer must defend. *Tanner v. State Farm Fire & Cas. Co.*, 874 So. 2d 1058, 1063–64 (Ala. 2003). However, the duty to defend is not unlimited. Alabama courts recognize that an insurer has no duty to defend claims that fall

outside the coverage of the policy. *Hartford Cas.*, 928 So. 2d at 1009-10. Where the underlying complaint, on its face, alleges facts that do not come within the policy's coverage, no duty to defend arises. *Id.* (citing *Ladner & Co. v. Southern Guar. Ins. Co.*, 347 So. 2d 100, 102 (Ala. 1977)).

Moreover, the Alabama Supreme Court has held that courts need not accept conclusory characterizations in a complaint at face value when those characterizations are contradicted by the specific factual allegations. *See Hartford Cas.*, 928 So. 2d at 1012 ("We therefore conclude that when the complaint supplies descriptive facts and those facts are irreconcilable with a legal theory, such as 'negligence,' asserted in the complaint, the facts, not the mere assertion of the legal theory, determine an insurer's duty to defend."). In evaluating the duty to defend, courts must look to the actual facts alleged, not artful labels or policy-tracking language designed to manufacture coverage. *See id.*

### A. The Policy Unambiguously Limits "Garage Operations" to Heavy Truck Repair.

"Alabama law requires courts to construe the terms of an insurance policy according to their ordinary meaning. So unless the context suggests otherwise, the terms of a policy should not be given a technical or scientific meaning." *Robinson v. Liberty Mut. Ins. Co.*, 958 F.3d 1137, 1139 (11th Cir. 2020).[1]

---

[1] "In Alabama, the interpretation of . . . an insurance contract[] is a question of law . . .." Alabama courts "enforce the insurance policy as written if the terms are unambiguous."



PD.56478184.5

The Policy's Garage Operations Coverage provides that MUSIC will pay all sums an "insured" legally must pay as damages because of "bodily injury" caused by an "accident" and resulting from "garage operations." The Policy initially defines "garage operations," in part, as "the ownership, maintenance, or use of locations for garage business and that portion of the roads or other accesses that adjoin these locations. . . ." Ex. C, p. 55 of 97. The Policy's Schedule of Operations Endorsement, however, narrows this definition and states that "the definition of 'Garage Operations' includes ONLY the operation(s) listed . . . and there is no coverage for, 'bodily injury', 'property damage' or 'loss' arising from operations, activities, or events not listed." Ex. C, p. 13 of 97. "Heavy Truck Repair" is the only operation listed on the Schedule of Operations Endorsement. *Id.* Accordingly, in order to trigger coverage under Garage Operations Coverage, the Underlying Actions must seek damages because of "bodily injury" arising from "Heavy Truck Repair."

**B. The Activities Alleged in the Underlying Actions are General Contracting and Building Improvement Services, Not Heavy Truck Repair.**

The Operative Complaint makes clear that the claims against Mobile Fleet do not arise from its heavy truck repair operations, but from Mobile Fleet's alleged role as a general contractor making improvements to the Subject Property

---

> [Further,] Alabama courts give the terms the meaning that "a reasonably prudent person applying for insurance would have understood the term[s] to mean."

*Robinson v. Liberty Mut. Ins. Co.*, 958 F.3d 1137, 1140 (11th Cir. 2020) (internal citations omitted).

("a vacant commercial building"). Taking the Operative Complaint at face value, Decedent was working for Jon's Tree Services as a landscaper's helper on the roof of a vacant building, which Mobile Fleet leased from MAR. At the time of the incident, no party—Mobile Fleet, MAR, Jon's Tree Services, Decedent, or any other person or entity—was performing heavy truck repair operations. Instead, Mobile Fleet was acting as a general contractor performing maintenance or making improvements to the Subject Property, and Westmoreland's negligence claim, as alleged in the Operative Complaint, is based on Mobile Fleet's alleged failure to provide fall protection on the roof, to protect or barricade skylights, to develop safety programs related to construction type hazards, and/or to supervise contractors performing roof work. These allegations do not describe activities remotely related to heavy truck repair operations.

Furthermore, although the Operative Complaint alleges Mobile Fleet had control and use of the Subject Property "for its garage operations business for heavy truck repair", there are no allegations that Decedent's injuries arose from, were connected to, or had any relationship whatsoever to these designated operations. Simply put, Mobile Fleet's alleged role as a general contractor or overseeing roof maintenance at the Subject Property are not within the scope of "Heavy Truck Repair" as that term is understood in its plain and ordinary meaning. They are distinct operations that fall outside the Policy's definition of "garage operations" as

narrowed by the Schedule of Operations Endorsement. Accordingly, the requirements of the Policy's Garage Operations Coverage are not met.

**C. Westmoreland Cannot Recast the Claims to Manufacture Coverage**

Although the Amended Consolidated Complaint attempts to characterize Mobile Fleet's activities as being "for its garage operations business for heavy truck repair", this effort to recast the factual allegations to trigger coverage should be given no weight for several reasons.

First, a comparison of the Consolidated Complaints shows that the reference to Mobile Fleet's "garage operations business for heavy truck repair" is a strategic amendment. The original Consolidated Complaint, filed on January 1, 2025, alleged that Mobile Fleet "had control of the premises and who also had control as a general contractor for the sub-contractor [Jon's Tree Services], and supervising the work being performed." [Doc. 1-1 at ¶ 8]. It further alleged that Mobile Fleet "proceeded to have improvements made to said location" and was "acting as a general contractor making improvement services to the location of the accident." [Doc. 1-1 at ¶¶ 9, 14]. The Operative Complaint, filed after this declaratory judgment action, then inserted new language stating that Mobile Fleet "had control and use of the premises for its garage operations business for heavy truck repair" and that Mobile Fleet "had control and use of the premises for garage operations business for heavy truck repair and was in the process of maintaining and making improvements to said location when

the fall occurred." Ex. F ¶¶ 8–9. This amendment grafted insurance policy terms in an attempt to manufacture coverage. However, it does not change the fact that the Underlying Actions do not seek damages resulting from "garage operations" as required by the Policy's Garage Operations Coverage grant.

Second, the Operative Complaint does not change the substantive factual allegations and describes conduct entirely unrelated to heavy truck repair. Decedent was a "landscaper's helper" working on the roof system of a "vacant commercial building." Ex. F ¶ 10. Furthermore, Mobile Fleet's alleged negligence involves the failure to provide fall protection on the roof, the failure to protect or barricade skylights, the failure to develop safety programs related to construction-type hazards, and the failure to supervise contractors performing roof work. Ex. F ¶¶ 15–19. These factual allegations have no connection to the repair of heavy trucks, and Westmoreland's conclusory characterization and use of policy terms cannot override the specific factual narrative.

Third, under Alabama law, the duty to defend is determined by comparing the allegations in the underlying complaint against the terms of the insurance policy. However, conclusory allegations that merely parrot policy language without factual support do not create a duty to defend. A court evaluating the duty to defend must consider whether the factual allegations, as opposed to conclusory legal characterizations, potentially fall within the policy's coverage. *See Hartford Cas.*,

928 So. 2d at 1012. Here, removing the conclusory label of "garage operations business for heavy truck repair", the remaining factual allegations describe a construction site accident involving a landscaper's helper who fell through a skylight at a vacant building undergoing renovation. No reasonable reading of these facts supports a finding that Decedent's death arose from "Heavy Truck Repair" as contemplated by the Policy's Schedule of Operations Endorsement.

**D. Extrinsic Evidence Confirms No Possibility of Coverage Under the Policy**

Although the Court need not consider extrinsic evidence, such evidence conclusively establishes that, regardless of how the Underlying Actions are ultimately resolved, the claims made and damages sought against Mobile Fleet cannot possibly fall within the Policy's coverage.

Mobile Fleet's verified discovery responses in the Underlying Actions unequivocally state that it "had not moved into the building located at 3100 – 9th Avenue North, Birmingham, Alabama . . . as of the date of the accident and had only recently entered into a lease for the building." *See* Ex. G, p. 7 of 33. Mobile Fleet further stated that it "retained Jon's Tree Services to remove trees that had grown onto and through the roof of the building" so that "Mobile Fleet could bring in another independent contractor to make any repairs to the roof and skylights" and "eventually . . . conduct its day-to-day operations in the building." *Id.* For this additional reason, the requirements of the Policy's Garage Operations Coverage are

not satisfied. Because these undisputed facts foreclose any coverage under the Policy's Garage Operations Coverage, MUSIC does not owe Mobile Fleet a duty to defend or indemnify Mobile Fleet in connection with the Underlying Actions.

## II. In the Alternative, MUSIC is Entitled to Rescind the Policy under Ala. Code § 27-14-7

Alabama Code § 27-14-7 provides, in part, as follows:

> All statements and descriptions in any application for an insurance policy or annuity contract, or in negotiations therefor, by, or in behalf of, the insured or annuitant shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts and incorrect statements shall not prevent a recovery under the policy or contract unless either:
>
> (1) Fraudulent;
>
> (2) Material either to the acceptance of the risk or to the hazard assumed by the insurer; or
>
> (3) The insurer in good faith would either not have issued the policy or contract, or would not have issued a policy or contract at the premium rate as applied for, or would not have issued a policy or contract in as large an amount or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had been known to the insurer as required either by the application for the policy or contract or otherwise.

Ala. Code § 27-14-7(a).

Under Alabama Code § 27-14-7(a)(2), an insurer may rescind a policy for even innocent material misrepresentations in the application. The insurer must show only that the applicant made a misrepresentation in the application, and that this

misrepresentation was a material contributing influence that induced the insurer to issue the policy. *Nationwide Mut. Fire Ins. Co. v. Guster Law Firm, LLC*, 944 F. Supp. 2d 1116, 1125 (N.D. Ala. 2013).

"[E]ven if innocently made, an incorrect statement that is material to the risk assumed by the insurer or that would have caused the insurer in good faith not to issue the policy in the manner that it did provides a basis for the insurer to avoid the policy." *Guster*, 944 F. Supp. 2d at 1128. *See also Allstate Ins. Co. v. Swann*, 27 F.3d 1539, 1543 (11th Cir. 1994) (insurer "need only have presented evidence that the [applicant] made the misrepresentation and that [the insurer] would not have issued the ... policy had it known the actual facts").

Here, Mobile Fleet's application contained a glaring omission because, despite leasing the Subject Property for at least three months prior to submitting the Policy Application to MUSIC, Mobile Fleet did not list the Subject Property as a location where garage operations were to be conducted. As such, the Subject Property was either: (a) not a location where the insured was authorized to conduct or was, in fact, conducting "garage operations" or (b) a location where "garage operations" were conducted. Therefore, to the extent Mobile Fleet was conducting "garage operations" at the Subject Property, MUSIC is entitled to summary judgment rescinding the Policy under Alabama Code § 27-14-7(a)(2).

## CONCLUSION

The Operative Complaint does not seek damages because of "bodily injury" or "property damage" caused by an "accident" and resulting from "garage operations" as defined by the Policy's Garage Operations Coverage, which limits the definition of "garage operations" to "Heavy Truck Repair". As addressed above, the activities giving rise to the Underlying Actions bear no relation to Mobile Fleet's heavy truck repair operations, and the Operative Complaint's mere references to policy language do not change this fact. Therefore, the Court should grant summary judgment in MUSIC's favor declaring that it does not have a duty to defend or indemnify Mobile Fleet in connection with the Underlying Actions.

Alternatively, if the Court finds that Mobile Fleet conducted "garage operations" at the Subject Property at the time of the incident made the basis of the Operative Complaint, the Policy is void due to material misrepresentations Mobile Fleet made in its Application, and as such, MUSIC is entitled to rescind the Policy under Alabama Code § 27-14-7(a)(2).

Respectfully submitted,

*<u>/s/ Kenneth W. Boyles, Jr.</u>*

Kenneth W. Boyles, Jr.
Maggie Arellano
Anderson M. Blackmon
PHELPS DUNBAR LLP
2025 3rd Avenue North, Suite 1000
Birmingham, AL 35203
Tel: (205) 716-5200
Fax: (205) 716-5389
kenneth.boyles@phelps.com

maggie.arellano@phelps.com
anderson.blackmon@phelps.com

*Attorneys for Plaintiff, Mesa Underwriters Specialty Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that on July 18, 2026, a true and accurate copy of the foregoing was electronically filed with the Clerk of Court for the United States District Court for the Northern District of Alabama using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.[2]

*/s/ Kenneth W. Boyles, Jr.*
**OF COUNSEL**

[2] I further certify that I was unable to electronically file the foregoing on July 17, 2026, due to an outage of the CM/ECF system. A copy of the foregoing document was transmitted via e-mail to all counsel of record on July 17, 2026.