FILED
2026 Jul-18 PM 04:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

# COMMERCIAL LEASE

This is a legally binding contract, if not understood, seek competent advice.

STATE OF ALABAMA JEFFERSON COUNTY

This lease is made this 7th day of January 2022 by and between **MAR PROPERTIES, LLC** hereinafter called "Lessor" and by **MOBILE FLEET SPECIALISTS OF BIRMINGHAM, INC.** hereinafter called "Lessee".

WITNESSETH: That the Lessor does hereby demise and let unto the Lessee the following Described Premises in the City of Birmingham, Alabama, to-wit: 3100 9th Avenue North, Birmingham, AL 35205-4551 consisting of an approximately 1-12,000 +,- square foot warehouse building and 1-960 +,- square foot office building and property consisting of parking, yard, fencing and sign situated on 2.2 +,- acres, subject to existing easements, if any, and the regulatory laws and ordinances of the political subdivision in which the property is situated, for use and occupation by the Lessee as a Fleet Management Shop with the trade name Mobile Fleet Specialists, Truck Service and Repair and Truck Wash and for no other or different use or purpose for and during the term beginning on Lease Execution and ending on the thirty-first day of January 2027.

1.RENT

In consideration whereof, the Lessee agrees to pay the Lessor **MAR PROPERTIES, LLC** at 4102 Heatherhedge Lane, Birmingham, AL 35242 or by ETF or ACH (or such other place of delivery as may be given by Lessor to Lessee) on the first day of each month of said term, in advance, for Rent and Additional Rent for said Described Premises, as follows:

Lease Execution – January 31, 2022: [redacted]

February 2022 - January 2023:
February 2023 - January 2024:
February 2024 - January 2025:
February 2025 - January 2026:
February 2026 - January 2027: [redacted]

Additional Rent of [redacted] per month consists of Current Ad Valorem Taxes: [redacted] per month. Special Assessments [redacted] Current Property and Casualty Insurance [redacted] per month. Additional Rent and increases in Additional Rent shall be paid by Lessee.

February 2022 Rent and Additional Rent ([redacted]) is due upon lease execution.

All Rent is absolute net to Lessor of any expense or cost including but not limited to ad valorem property taxes, special assessments, property and casualty insurance, maintenance and repairs, all of which will be the sole responsibility of Lessee except as modified in Further Terms and Conditions.

Lessee agrees that a Service and Bookkeeping charge of [redacted] shall become due and payable each and every month that the rent has not been received in the office of Lessor by the 5th of the month, or if a check accepted as rent or other payment is returned unpaid to Lessor for any reason.

## 2.DEPOSIT

Lessor and Lessee agree that Lessee will deposit with Lessor the sum of [redacted] on the date of execution of this lease, to be to be held by Lessor, without interest payable to Lessee, as security for the payment of rent and any and all other sums of money for which Lessee shall or may become liable to pay to Lessor under this lease, and for the faithful performance by Lessee of all covenants and agreements under this lease. Said deposit will be returned to Lessee upon termination of this lease provided Lessee shall have made all such payments and performed all such covenants and agreements. Nothing in this paragraph shall be deemed to limit the amount of any claim, demand or cause of action by Lessor against Lessee under the provisions of this lease.

## 3.QUIET ENJOYMENT AND CONDITION OF PREMISES

This lease is made upon the following terms, conditions, and covenants: The Lessor covenants to keep the Lessee in possession of the Described Premises during said term, but shall not be liable for the loss of use by eminent domain nor the failure or inability of the Lessee to obtain possession thereof provided the Lessor shall exercise due diligence and effort to place the Lessee in possession. Nothing herein contained shall be construed as a warranty that said Described Premises are in good condition or are fit for or suitable for the use or purpose for which they are let. The Lessor has made no representations or promises with respect to the Described Premises except as herein expressly set forth. The Lessee has examined the Described Premises and accepts the same in the physical condition in which the same now exists (except as otherwise expressly provided herein.)

## 4.HAZARDOUS SUBSTANCES

Lessee expressly acknowledge that the Lessor has not made an independent investigation or determination with respect to the existence or non-existence of asbestos, PCB transformers, or other toxic, hazardous, or contaminated substances or gases, in, on, or about the property or premises, or for the presence of underground storage tanks.

Any such investigation or determination shall be the responsibility of Lessee and Lessor shall not be held responsible therefore.

In consideration of existing and future legislation concerning the handling, storage, use and disposition of dangerous/hazardous chemicals and materials, Lessee acknowledges the risks and liabilities associated with same and agree to the following: Lessee shall determine what laws, regulations and ordinances regarding the handling, storage, use and disposition of dangerous/hazardous chemicals and materials apply to Lessee's business with respect to the leased Premises. Lessee shall take all reasonable and necessary steps, including any inspections, test or studies, as required by such laws to cause prompt and ongoing compliance therewith. Lessee agrees to immediately notify Lessor and the appropriate authorities of its material spills or its improper discharges of any dangerous/hazardous chemicals and materials. Further, in addition to and in further support of any compliance with other hold harmless and indemnification obligations, Lessee acknowledges and assumes total responsibility for any and all dangerous/hazardous chemicals and materials it may handle, store, use and dispose of in or about leased Premises. Such responsibility shall include, but not be limited to, medical costs and personal injury awards (compensatory and/or punitive), environmental clean-ups and related costs, governmental fines against Lessee resulting from Lessee's willful and/or negligent handling, storage, use, disposition of dangerous/hazardous chemicals and materials, and/or Lessee's noncompliance with applicable law. Lessee shall upon governmental request or upon Lessor' reasonable request, disclose the type and quantity of dangerous /hazardous chemicals and materials Lessee is/has handled, stored, used, disposed of in or about the leased premises. Lessee is not responsible for any asbestos, PCB's, or other toxic, hazardous, or contaminated substances or gases, in, on, or about the property or premises, or for the presence of underground storage tanks due to or by previous Lessees or Lessors.

## 5.ROOF

Should the roof of the building leak at any time during said term, the Lessee will repair the same within a reasonable time. In no event shall the Lessor be liable for damages or injuries arising from such defect, nor shall the Lessor be liable for damages or injuries arising from defective workmanship or materials, the Lessee hereby expressly waiving the same. Lessor shall not be liable for any deaths, injury, loss or damage resulting from any repair or improvement undertaken, voluntarily or involuntarily, by or on behalf of, the Lessee. See further terms and conditions.

## 6.REPAIRS

Lessor shall not be obligated or required to make any other repairs or do any other work on or about the Described Premises or property or any part thereof, unless and only to the extent herein agreed. All portions of the building and property hereby leased shall be kept in good repair by Lessee and at the end of the term hereof, the Lessee shall deliver

the Described Premises to Lessor in good repair and condition, reasonable wear and tear excepted. However, Lessor reserves the right to enter upon the Described Premises to make such repairs and to do such work on or about the Described Premises and property as Lessor may deem necessary or proper, or that Lessor may be lawfully required to make.

7.INSPECTION AND SHOWING

Lessor reserves the right to visit and inspect the Described Premises at all reasonable times upon advance notice to Lessee, except in case of an emergency in which event no notice shall be required; and the right to show the Described Premises to prospective lessees and purchasers.

8.FAILURE OF LESSEE TO REPAIR

Should the Lessee fail to make repairs or maintenance agreed to by Lessee under this lease, the Lessor may enter the Described Premises and make such repairs and collect the cost thereof from the Lessee as Additional Rent. Except as herein specifically provided, the Lessee will not make or permit to be made any alterations, additions, improvements or changes to the premises, nor will the Lessee paint the outside of the building or permit the same to be painted without the written consent of the Lessor before work is contracted or let. The consent to a particular alteration, addition, improvement or change shall not be deemed a consent to, nor a waiver of, a restriction against alterations, additions, improvements or changes for the future.

9. ALTERATIONS BY LESSEE, UPKEEP AND COMPLIANCE WITH LAW

Lessee will replace all keys lost or broken and will pay all bills for utilities and services used on the Described Premises. Lessee will keep in good order and repair the Described Premises. The Lessee will keep in good order and repair the interior and exterior of the building, grounds, parking areas, water and electric fixtures, and will keep heating, ventilating and air-conditioning (HVAC) equipment, electric wiring, pipes, water closets, drains, sewer lines and other plumbing on the Described Premises in good order and repair, ordinary wear and tear excepted. Lessee will do all repairs, modifications, and replacements which may be required by the applicable laws or ordinances. Lessor shall not be liable for any damages caused by, or growing out of, any breakage, leakage, getting out of order or defective conditions of the interior and exterior of the building, water and electric fixtures, heating, ventilating and air-conditioning (HVAC) equipment, electric wiring, water closets, drains and sewer lines or plumbing or any of them. Lessee will comply at all times and in all respects with all the applicable laws and ordinances relating to nuisance, insofar as the building and premises hereby let, and the streets and highways bounding the same are concerned, and the Lessee will not by any act of omission render the Lessor liable for any violation thereof. Lessee will not commit any waste of property or permit the same to be done and will take good care of said Described

Premises. Lessor will keep all utilities on at all times and will not disconnect any utilities without first giving Lessor at least 7 days notice.

10.LESSEE'S LIABILITY AND INSURANCE, INDEMNITY, SUBROGATION

Lessee's Liability Insurance: Lessee shall provide and keep in force during the Term hereof, and any extension or renewal thereof in the name of Lessee and Lessor, as its respective interests may appear, commercial general liability insurance against any and all claims for injuries to persons or property occurring in, upon, about or from the Described Premises, including all damages from signs, glass, awning, fixtures and other appurtenances situated on, in or used in connection with the Premises in the amount of not less than $1,000,000.00 in respect to injuries to any one person, not less than $1,000,000.00 in respect to any one accident, and not less than $1,000,000.00 in respect to property damage. All such insurance required to be maintained by Lessee shall be with an insurance company satisfactory to Lessor, shall name Lessor and Lessor's agent as an additional insured party, and the Lessee shall provide Lessor with copies or certificates of all policies required herein, including an endorsement providing that such insurance shall not be canceled except after thirty (30) days' notice in writing to Lessor. Should Lessee fail to furnish such policies as hereinabove provided, Lessor may obtain such insurance and the premiums on such insurance shall be deemed Additional Rent to be paid by Lessee to Lessor on demand.

Indemnity: Lessee shall indemnify, Lessor its agents, employees, officers, directors, servants, successors, and assigns, for all claims, causes of action, damages or suits in law or equity because of any matter or thing done, omitted, or suffered to be done now or hereafter arising from any causes of action, suits, proceedings, claims, demands, liability, damages and cost for personal or business injury, pain and suffering, mental anguish, loss of wages or profits, decreased earning capacity, expenses, compensation, property damage, loss of use of property and any and all other matters or items of damage whatsoever in law or equity which may be brought against the Lessor as a result of Lessee's use of the Described Premises during the term of the lease.

Lessee does hereby waive and release Lessor from any and all liabilities or responsibilities or for any other claim by or through Lessee, by way of subrogation or otherwise, for any loss or damage covered by (or which should be covered by) the insurance policies required to be maintained hereunder by Lessee, even if the loss or damage shall have been caused by the fault or negligence of Lessor. Lessee agrees to obtain from its respective insurance carriers waiver of subrogation endorsements to all such policies in form reasonably acceptable to Lessor.

Lessor shall during the entire term of this Lease, keep in force by advance payment of premiums Fire and extended coverage insurance insuring the Described Premises and all improvements to the Described Premises, in such amounts determined by Lessor to be necessary but in no event less than the full replacement value of the Described

Premises. The cost of insurance shall be reimbursed by Lessee to Lessor as provided herein. Any improvements made by Lessee shall be insured by Lessee.

11.DEFECTS IN PREMISES

Lessor shall not be liable for any injury or damage caused by, or growing out of, any defect in said building, or its equipment, drains, plumbing, wiring, electric equipment or appurtenances, or in the Described Premises, or caused by, or growing out of fire, rain, wind leaks, seepage or other cause.

12. DEFAULT AND REMEDIES

The following events shall be deemed to be events of default by Lessee under this Lease:

(A)Lessee shall fail to pay when due any installment of rent or other indebtedness becoming due under this Lease.

(B)Lessee shall fail to comply with any term, provision or covenant of this Lease, other than the payment of rent or other indebtedness due under the terms of this Lease and Lessee shall not have cured such failure within thirty (30) days after written notice thereof to Lessee or in such shorter period as may be specified herein with respect to any particular covenant.

(C)Lessee or Lessee's assignee or sublessee or any guarantor of any obligation under this Lease or any sublease thereunder shall become insolvent or shall make a transfer in fraud of creditors or shall make an assignment for the benefit of creditors or shall suffer or allow a tax lien (State or Federal) to be filed against it or against any of its property.

(D)Lessee or Lessee's assignee or sublessee or any guarantor of any obligation under this Lease or any sublease thereunder shall commence or have commenced against it any proceeding under any section or chapter of the Bankruptcy Code, as amended, or under any similar law or statute of the United States or any state thereof.

(E)A receiver or trustee shall be appointed for the Described Premises or for all or substantially all of the assets of Lessee or Lessee's assignee or Lessee's sublessee or of any guarantor of any obligation under this Lease or under any sublease thereunder.

(F)Lessee or Lessee's assignee or sublessee shall desert, vacate or abandon any substantial portion of the Described Premises.

(G)Lessee or Lessee's assignee or sublessee shall do or permit to be done anything which creates a lien upon the Described Premises or any part thereof.

(H)Lessee or Lessee's assignee or sublessee shall make a bulk transfer of or allow levy, seizure or attachment upon the inventory or equipment or fixtures then located in the Described Premises.

(I)Lessee or Lessee's assignee or sublessee shall make alterations to the Described Premises without the prior written approval of Lessee.

Upon the occurrence of any such events of default, Lessor shall have the option to pursue any one or more of the following remedies without any notice or demand whatsoever:

(A)Terminate this Lease, in which event Lessee shall immediately surrender the Described Premises to Lessor, and if Lessee fails to do so, Lessor may, without prejudice to any other remedy which it may have for possession or arrearages in rent, enter upon and take possession of the Described Premises and expel or remove Lessee and any other person who may be occupying the Described Premises or any part thereof, by force if necessary, without being liable for prosecution or any claim of damages therefor; and Lessee agrees to pay to Lessor, in addition to indebtedness then incurred, upon demand the amount of all loss and damage which Lessor may suffer by reason of such termination, including reasonable attorney's fees, whether through inability to relet the Described Premises on satisfactory terms or otherwise.

(B)Reenter upon and take possession of the Described Premises and expel or remove Lessee and any other person who may be occupying said Described Premises or any part thereof and remove or store any property therein, by force if necessary, without being liable for prosecution or any claim for damages, trespass or conversion therefor; and, if Lessor so elects, relet the Described Premises (including, at Lessor's option, all or part of those alterations, decorations, additions, improvements, fixtures and other items which, pursuant to the terms hereof, would become the property of Lessor at the termination of the Lease) on such terms as Lessor may deem advisable and receive the rent therefor; and Lessee agrees to pay to Lessor on demand any deficiency that may arise by reason of such reletting, including all costs associated with alteration, refurbishment or repair to the Described Premises incurred by Lessor in reletting the Described Premises, plus brokerage commissions for such reletting. The exercise by Lessor of the remedy provided by this Subsection B shall not constitute a termination of this Lease unless Lessor in writing so notifies Lessee either before or after such termination; but Lessor may, after the exercise of any remedy provided by this Subsection B thereafter terminate this Lease by reason of any event of default.

(C)Enter upon the Described Premises by force if necessary without being liable for prosecution or any claim for damages therefor, and do whatever Lessee is obligated to do under the terms of this Lease; and Lessee agrees to reimburse Lessor on demand for any expenses which Lessor may incur in thus effecting compliance with Lessee's obligations under this Lease; and Lessee further agrees to indemnify and hold Lessor harmless from

any claim for damages, whether asserted by Lessee or by others, resulting from such action.

(D)Accelerate the Fixed Minimum Rent due hereunder for the balance of the Lease Term and sue to collect same.

Pursuit of any of the foregoing remedies shall not preclude pursuit of any other remedies herein provided or provided by law, nor shall pursuit of any other such remedy constitute a forfeiture or waiver of any rent or other indebtedness due to Lessor hereunder or of any damages accruing to Lessor by reason of the violation of any of the terms, provisions and covenants herein contained. Forbearance by Lessor to enforce one or more of the remedies herein provided upon an event of default shall not be deemed or construed to constitute a waiver of such default. The amount of loss or damage payable to Lessor (regardless of whether under Subsection A or B of this Section 12) shall include without limitation, expenses of such reentry, repossession, expulsion, removal and storage, as the case may be, and the expenses of any repairs or remodeling undertaken by Lessor.

## 13. LESSOR'S LIEN

In addition to the statutory Lessor's lien, Lessor shall have at all times a valid contractual lien for all rentals, indebtedness (including attorneys' fees), and damages which may become due hereunder from Lessee, upon all goods, wares, equipment, fixtures, furniture and other personal property of Lessee situated in or upon the Described Premises; and such property shall not be removed without consent of Lessor until all such rents, indebtedness and damages shall first have been paid and discharged. Upon the occurrence of an event of default, Lessor may, in addition to other remedies provided herein or by law, enter upon the Described Premises and take possession of any and all such goods, wares, equipment, fixtures, furniture and other personal property of Lessee situated on the Described Premises without liability for trespass or conversion and proceed to exercise any remedy provided by the Uniform Commercial Code. Unless such property is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lessor will give Lessee reasonable notice of the time and place of any public sale thereof or of the time after which any private sale or any other intended disposition thereof is to be made. Requirements for reasonable notice shall be met if given at least five (5) days before the time of the sale or other disposition. Expenses of retaking, holding, preparing for sale, selling or the like shall include Lessor's reasonable attorneys' fees and legal expenses. The proceeds of such sale or other disposition, less any and all such expenses, shall be applied as a credit against any rentals, indebtedness, or damages due by Lessee to Lessor. Any surplus shall be paid to Lessee, and Lessee and Guarantors herein agree to pay any deficiency forthwith.

Notwithstanding anything, Lessor agrees to execute and deliver, upon request of Lessee, a Lessor's lien waiver, and consent, with respect to third party equipment financing (not attached to the premises) in form reasonably required by Lessee's lender(s).

Lessee.

14.REMOVAL OF GOODS

The Lessee shall not remove any of the goods, wares or merchandise of the Lessee from the Described Premises other than in the regular course of Lessee's trade or business without having first paid all rent due or to become due under the terms of this lease.

15. ACCELERATION OF RENT

Upon termination or breach of this lease or re-entry upon the Described Premises for any one or more of the causes set forth above, or upon termination of this lease or re-entry of the Described Premises, the rents provided for in this lease for the balance of the original rental term, or any renewal term or other extended term, and all other indebtedness to the Lessor owed by the Lessee, shall be and become immediately due and payable at the option of the Lessor and without regard to whether or not possession of the premises have been surrendered to or taken by the Lessor.

16.DEFAULT-ATTORNEY FEE AND COST

The Lessee agrees to pay Lessor, or on Lessor's behalf, reasonable attorney's fees in the event Lessor employs an attorney to collect any rents hereunder by Lessee, or to protect the interest of Lessor in the event the Lessee is adjudged bankrupt, or legal process is levied upon the goods, furniture, effects or personal property of the Lessee upon the Described Premises, or upon the interest of the Lessee in this lease or in the Described Premises, or in the event the Lessee violates any of the terms, conditions, or covenants on the part of the Lessee herein contained.

17.WAIVER OF EXEMPTIONS

In order to further secure the prompt payments of said rents as and when the same mature and the faithful performance by the Lessee of all and singular the terms, conditions, and covenants on the part of the Lessee herein contained, and all reasonable damages, and costs that the Lessor may sustain by reason of the violation of said terms, conditions, and covenants, or any of them, the Lessee hereby waives any and all rights to claim personal property as exempt from levy and sale, under the laws of any State of the United States.

18.ABANDONMENT AND RE-LETTING

In the event the Lessee abandons the leased premises before the expiration of the term, whether voluntarily or involuntarily, or violates any of the terms, conditions, or covenants hereof, the Lessor shall have the privilege at Lessor's option of re-entering and taking possession of the Described Premises and leasing all or any portion of the Described

Premises for such term and for such use deemed as satisfactory to the Lessor, applying each month the net proceeds obtained from said leasing to the credit of the Lessee herein, up to the amount due under the terms of this lease and the balance to the Lessor and said leasing shall not release the Lessee from liability hereunder for the rents reserved of the residue of the term hereof, but Lessee shall be responsible monthly for the difference, if any, between the net rents obtained from such leasing and the monthly rent reserved hereunder, and said difference shall be payable to the Lessor on the first day of each month for the residue of the term hereof.

## 19.RE-ENTRY, ETC.

No re-entry hereunder shall bar the recovery of rent or damages for the breach of any of the terms, conditions, or covenants on the part of the Lessee herein contained. The receipt of rent after breach or condition broken, or delay on the part of Lessor to enforce any right hereunder shall not be deemed a waiver of forfeiture, or a waiver of the right of the Lessor to annul the lease or to re-enter the Described Premises or to re-let the same, or to accelerate the maturity of the rents hereunder.

## 20.IMPROVEMENTS AND ADDITIONS PROPERTY OF LESSOR

All improvements and additions to the Described Premises shall become the property of the Lessor, with the exception of such additions as are usually classed as furniture and trade fixtures, said furniture and trade fixtures are to remain the property of the Lessee, and may be removed by the Lessee two (2) weeks prior to the expiration of this lease, provided all terms, conditions and covenants of within contract have been complied with by Lessee and provided said Lessee restores the building and Described Premises to its original condition, normal wear and tear excepted.

## 21.FIRE AND OTHER CASUALTY

In the event of the total destruction of, or partial damage to the building or upon the Described Premises by fire or other casualty, Lessor shall proceed with due diligence and dispatch to repair and restore the buildings to the conditions to which they existed immediately prior to the occurrence of such casualty, at Lessor's cost and expense, provided such cost does not exceed the proceeds of insurance collected on the buildings or premises, by reason of such casualty, the application of which insurance proceeds are not prohibited, by reason of any mortgage provision, from being used toward the cost of restoration and repairing the same, provided, further, that if the unexpired portion of the term or any extension thereof shall be two (2) years or less on the date of such casualty and cost of such repair or restoration exceeds twenty percent (20%) of the then replacement value of said damaged leased premises, as estimated by two or more reputable contractors, Lessor may by written notice to the Lessee, within thirty (30) days after the occurrence of such casualty, terminate this lease. If Lessor exercises the above right to terminate this lease and Lessee elects to exercise an option of renewal

privilege which Lessee may have under this lease, which if exercised, would extend the unexpired term beyond five (5) years, Lessee may void such above notice of Lessor's right to terminate this lease by exercising such option renewal privilege within such thirty (30) day period. If the insurance proceeds are insufficient to affect such restoration of repairs, Lessor at its option may cancel this lease by written notice to Lessee within thirty (30) days after the occurrence of such casualty. In the event the repairing and restoring of the premises cannot be completed within four (4) months after the date of occurrence of such casualty, as estimated by two or more reputable contractors, from the date of such damage or destruction until the Described Premises has been substantially repaired or restored, an equitable abatement of rent shall be allowed the Lessee.

## 22.TRANSFER OR ASSIGNMENT, CONDITIONS

Each and every transfer or assignment of this lease or any interest therein, and each and every sub-letting of the Described Premises, or any part thereof, or any interest therein shall be null and void, unless the written consent of the Lessor be first obtained thereto. As a condition precedent to the obtaining of such consent, the assignee or sub-lessee must assume, in writing, all the obligations of the Lessee hereunder, but such assumption shall not operate to release the Lessee from any agreement or understanding on the part of the Lessee expressed or implied in this lease. If a lease assignment is consummated for this Lessee or any one or more assigns before expiration term of this lease, then the Lessee or his subsequent assigns shall pay a [redacted] assignment fee for each, and every lease assignment made.

## 23.NOTICES AND DEMANDS

All notices and demands authorized or required to be given to the Lessee under any provision hereof must be in writing, and may be delivered to the Lessee in person or left on or in the leased premises or shall be conclusively deemed to have been delivered to the Lessee if the same be deposited in the United States mail addressed to the Lessee at the leased premises or at 875 Vestlake Ridge Drive, Birmingham, AL 35242 with the proper postage affixed thereto. All notices herein authorized are required to be given to the Lessor by certified mail, addressed to the Lessor at 4102 Heatherhedge Ln, Birmingham, AL 35226, and said notices must be in writing.

## 24.AGENT'S COMMISSION AGREEMENT

Lessor, its successors or assigns, in consideration of the services rendered by MARK DINAN, as Agent in leasing the Described Premises, Lessor hereby agrees to pay Agent, its successors or assigns for the services rendered in effecting this lease an amount equal to four half percent (4%) of the Gross Lease Value of lease years 1 through 5, payable payable upon lease execution for year 1 and each year thereafter for years 2-5 on February 1 of each year plus two percent (2%) of the gross lease value of any renewals, expansions or extensions, whether or not affected by Agent(s) or any other person, firm or

corporation on the annual anniversary date of the Lease. If Lessor sells the Property to Lessee or its assigns, Lessor/Seller will pay Agent a commission equal to two and one-half percent of the gross sale price on closing.

25.LESSEE WILL HOLD HARMLESS

Lessee will indemnify and hold Lessor free and harmless from all demands, claims and suits or expenses caused by any default committed hereunder on the part of the Lessee. Lessee will further indemnify and save harmless Lessor from any loss, cost, damage and, or expenses caused by injuries to persons or property while in, on or about the Described Premises, not attributable to the willfully wrongful act or negligence of the Lessor. Any property stored in the Described Premises shall be at the sole risk of Lessee.

26.WAIVER OF SUBROGATION RIGHTS

Neither Lessor nor Lessee shall be liable to the other for any loss or damage from risks ordinarily insured against under fire insurance policies with extended coverage, endorsements, irrespective of whether such loss or damage results from their negligence or that of any of their servants, employees, licensees or contractors to the extent that such losses are covered by valid and collectable insurance on the property at the time of the loss.

27.HOLDOVER

Should the Lessee continue to occupy the premises after the expiration of the said term or after a forfeiture incurred, whether with or against the consent of the Lessor, such tenancy shall be a tenancy at sufferance and in no event a tenancy from month to month, or from year to year, in which case, rent shall be 150% the stated amount.

28.NON-WAIVER, EMINENT DOMAIN AND CONDEMNATION

The failure of the Lessor to insist, in any one or more instances, upon a strict performance of any of the covenants of this lease, or to exercise any option herein contained, shall not be construed as a waiver, or a relinquishment for the future, of such covenant or option, but the same shall continue and remain in full force and effect. The receipt by the Lessor of rent with knowledge of the breach of any covenant hereof shall not be deemed a waiver of such breach, and no waiver by the Lessor of any provision hereof shall be deemed to have been made unless expressed in writing and signed by the Lessor.

If all or part of the Described Premises is taken by eminent domain ("eminent domain" shall include the exercise of any similar power of taking, and any purchase or acquisition in lieu of condemnation), or in the event the improvements are condemned and ordered torn down or removed by lawful authority, then the term of this lease shall cease as of the date possession shall be taken by the condemning authority, or as of the date improvements are ordered torn down or removed, whichever may be applicable, will the

rent be apportioned as of the date of such taking or of such order, as the case may be, provided, however, if as a result of a partial taking of the Described Premises by eminent domain, the ground floor area of the building forming a part of the Described Premises is reduced by not more than twenty-five percent (25%), the Lessor may elect to continue the term of this lease and to restore, at Lessor's expense, the remaining premises to a complete architectural unit with storefront, signs and interior of equal appearance and utility as they had previous to the taking, but there will be pro-rata reduction of the rent payable each month. The Lessor shall be deemed to have exercised its said option to restore the Described Premises unless, within 30 days after the date of taking, the Lessor shall notify the Lessee in writing of its election to terminate this lease. The Lessor shall be entitled to receive all of the proceeds of any total or partial taking of the Described Premises by eminent domain, including any part of such award as may be attributable to the unexpired leasehold interest or other rights of the Lessee in the Described Premises, and the Lessee hereby assigns, and transfers to the Lessor all of the Lessee's right to receive any part of such proceeds.

29.SUBORDINATION/ATTORNMENT

This lease is subordinate to the lien of any mortgage or mortgages, or the lien resulting from any other method of financing now or hereafter in force against the land and/or building of which the premises are a part and to all advances heretofore made or hereafter to be made upon the security thereof. The Lessee agrees to execute and deliver to Lessor from time to time within ten (10) days after written request by the Lessor all documents which might be required by the Lessor to confirm such subordination.

30.CLEAN PREMISES UPON TERMINATION, ETC.

The Lessee hereby agrees that upon the expiration or prior termination of this lease, the Lessee will promptly remove from the Described Premises all trash, debris and personal property of the Lessee, and the Lessee will return the Described Premises to Lessor in good repair and condition, reasonable wear and tear excepted, and Lessee will leave all floors as clean as it is possible by use of broom and vacuum. Lessee will thoroughly clean all dust from the Described Premises. Lessee will leave or remove any alterations it made to the Described Premises as directed by Lessor.

31.SIGNAGE

Signage: Prior to the installation of any signage, Lessee shall submit proposed drawings for Lessor Approval. If/when Lessee vacates the premises, Lessee shall remove its signage as well as patching & painting any holes, damage, and/or discoloration on the fascia within one (1) week of moving out. If Lessee fails to do so Lessor may perform these duties and Lessee agrees to reimburse Lessor the reasonably incurred costs upon ten (10) days request along with a fifteen percent (15%) administrative fee.

## 32.ADDENDUM CLAUSE

This lease consists of 19 pages together with an Exhibit "A" and Exhibit "B", which are attached hereto, initialed by the parties and incorporated in this lease by reference. In case of conflict between the printed portion of this Lease and the Addendum, the terms of the Addendum shall prevail.

It is understood and agreed by the parties hereto that this lease shall be binding upon the Lessee, assigns and successors.

FURTHER TERMS AND CONDITIONS MADE A PART HEREOF
The above-described Lease Agreement is hereby modified and changed as follows:

Condition: Lessor will deliver the Described Premises as-is where is.

License and Permits: Prior to the Commencement Date or any alterations or improvements to the Described Premises, Lessee shall apply for and secure, at Lessee's sole cost and expense, any licenses, permits and approvals, of any nature whatsoever as may be required by any governmental body, agency or authority for the operation and maintenance of the Permitted Uses at the Demised Premises, and shall secure, maintain and comply with all such licenses, permits and approvals at all times during the Term of this Lease, including any Renewal Term.

Lessee's Leasehold Improvements: As an inducement to enter into this Lease, Lessee agrees to clean out the Described Premises including the fenced yard, remove trees along the Building, remove all items in the fenced yard, make repairs to the roof, add drive in doors, lighting, water to the warehouse, an entrance and yard improvements.

Lessee will be allowed to make improvements as it sees fit for its operation of the Property that is acceptable to Lessor including but not limited to: flooring; lighting; signage; painting of building interior, etc. Lessee will provide Lessor with plans and specifications before work commences which are to be approved by Lessor. Lessee will obtain all permits and approvals required and complete work in a timely, workmanlike and first-class matter. Lessee will provide lien waivers from all contractors and subcontractors.

Utilities: Lessee shall pay all charges for heat, electricity, gas and other utility services, used or consumed in the premises, including but not limited to, water, sewer and sewer service charges. All utilities will be transferred to Lessee on or upon occupancy.

Right of Second Refusal. Provided Lessee has paid all rent on time and has not been notified of any default of this Lease, Lessee shall have the right of second refusal to purchase the property. This right is subject to Lessor's family members first right of refusal. Lessor shall have seven (7) days from the time notice is given from Lessor to Lessee to accept the offer.

Right to Renew of Extend the Lease. Provided Lessee has paid all rent on time and has not been notified of any default of this Lease, Lessee shall have the right to extend the Lease for five (5) years after the initial five (5) year term by giving at lease ninety (90) day written notice to Lessor. The Rent during the extension shall increase three percent (3%) per year.

HVAC Maintenance and Repairs: By Lessee.

ROOF Maintenance: By Lessee.

Limitation on Right of Recovery Against Lessor: Lessee acknowledges and agrees that the liability of Lessor under this Lease shall be limited to its interest in the Described Premises and any judgments rendered against Lessor shall be satisfied solely out of the proceeds of sale of its interest in the Described Premises. No personal judgment shall lie against Lessor upon extinguishment of its rights in the Described Premises and any judgment so rendered shall not give rise to any right of execution or levy against Lessor's assets. The provisions hereof shall inure to Lessor's successors and assigns including any mortgagee. The foregoing provisions are not intended to relieve Lessor from the performance of any of Lessor's obligations under this Lease, but only to limit the personal liability of Lessor in case of recovery of a judgment against Lessor; nor shall the foregoing be deemed to limit Lessee's rights to obtain injunctive relief or a specific performance or to avail itself of any other right or remedy which may be awarded Lessee by law or under this Lease.

In witness whereof, the Lessor and Lessee have respectively executed these presents on this 7th day of January 2022.

Lessor: **MAR PROPERTIES, LLC**

By: Margaret Ann Rickles

STATE OF ALABAMA
COUNTY OF Jefferson

I, the undersigned authority in and for said County, in said State, hereby certify that Margaret Ann Rickles, whose name is signed to the foregoing instrument, and who is known to me, acknowledged before me that being informed of the contents of the instrument they executed and delivered the same voluntarily.

Given under my hand and official seal this the 7th day of January, 2022.

Notary Public Brittney Adams
My Commission expires: 06/20/2022

BRITTNEY ADAMS
NOTARY PUBLIC
STATE OF ALABAMA
COMM. EXP. 06-20-2022

Lessee: **MOBILE FLEET SPECIALISTS OF BIRMINGHAM, INC.**

______________________________

Remco Hoytink
Print Name

Its: President

STATE OF Alabama
COUNTY OF Jefferson

I, the undersigned authority in and for said County, in said State, hereby certify Remco Hoytink, whose names are signed to the foregoing instrument, and who are known to me, acknowledged before me that being informed of the contents of the instrument they executed and delivered the same voluntarily for and as the act of said corporation.

Given under my hand and official seal this the 7th day of January, 2022.

Notary Public
My Commission expires:

MY COMMISSION EXPIRES AUGUST 12, 2022

**Exhibit B Rules**

Lessee hereby agrees as follows:

(1) All garbage and refuse shall be kept in the kind of container specified by Lessor, and shall be placed outside of the Described Premises, prepared for collection in the manner and at the times and places specified by Lessor. If Lessor shall provide or designate a service for picking up refuse and garbage, Lessee shall use the same. Notwithstanding the above, Lessee shall be responsible to pay the cost of removal of extraordinary and unusual amounts of trash, building material, debris, or waste product from its operation.

(2) No radio or television or other similar device shall be installed without first obtaining in each instance Lessor's consent in writing, except that Lessee shall be permitted to have a television in its lobby without further approval from Lessor. No aerial shall be erected on the roof or exterior walls of the Described Premises, or on the grounds, without in each instance, the written consent of Lessor. Any aerial so installed without such written consent shall be subject to removal without notice at any time.

(3) No loudspeakers, televisions, phonographs, radios or other devices shall be used in a manner so as to be heard or seen outside the Described Premises without the prior written consent of Lessor.

(4) Lessee shall keep the Described Premises at a temperature sufficiently high to prevent freezing of water in pipes and fixtures.

(5) The plumbing facilities shall not be used for any purpose other than those for which they are constructed, and no foreign substance of any kind shall be placed therein. The expense of any breakage, stoppage, or damage resulting from a violation of this provision shall be borne by Lessee who shall, or whose employees, agents, or invitees, shall have caused such.

(6) Lessee shall not attach or permit to be attached additional locks or similar devices to any door or window

(7) Lessee shall not burn any trash or garbage of any kind in or about the Described Premises or the Office Building.

(8) Lessor may amend or add any additional reasonable Rules and Regulations.

**Exhibit A**

Leased Premises (approximate boundaries)



## GUARANTY

For value received and in consideration for and as an inducement to MAR PROPERTIES, LLC (hereinafter referred to as "Lessor") to enter into the within Lease, as Lessor, with **MOBILE FLEET SPECIALISTS OF BIRMINGHAM, INC.**, (hereinafter referred to as "Lessee"), the undersigned, Jeff Osborn, (hereinafter referred to as "Guarantor") hereby guarantees to Lessor the full performance and observance of all payments, covenants, provisions and conditions of said Lease to be paid, performed and observed by Lessee.

In case of default by Lessee under said Lease, Lessor shall not be required prior to demand on, or payment by, Guarantor to make any demand upon or pursue or exhaust any of its rights or remedies against Lessee with respect to such default and Guarantor shall pay to Lessor any and all amounts due and unpaid by Lessee to Lessor, in like manner as if such amounts constituted direct and primary obligations of Guarantor.

This guaranty agreement made and entered into in the State of Alabama shall inure to the benefit of Lessor, jointly and severally and to the respective legal representatives, heirs, successors and assigns of Lessor, and shall be binding upon Guarantor, its successors and assigns.

IN WITNESS WHEREOF, the undersigned has caused there presents to be executed this 7th day of JANUARY, 2022.

[signature]

JEFFREY S. OSBORN
Print Name

STATE OF Alabama
COUNTY OF Jefferson

I, the undersigned authority in and for said County, in said State, hereby certify that Jeff Osborn whose name is signed to the foregoing instrument, and who is known to me, acknowledged before me that being informed of the contents of the instrument he executed and delivered the same voluntarily for and as the act of said corporation.

Given under my hand and official seal this the 7th January, 2022.

[signature]

Notary Public
My Commission expires: MY COMMISSION EXPIRES AUGUST 12, 2022

GUARANTY

For value received and in consideration for and as an inducement to MAR PROPERTIES, LLC (hereinafter referred to as "Lessor") to enter into the within Lease, as Lessor, with **MOBILE FLEET SPECIALISTS OF BIRMINGHAM, INC.**, (hereinafter referred to as "Lessee"), the undersigned, Remco Hoytink, (hereinafter referred to as "Guarantor") hereby guarantees to Lessor the full performance and observance of all payments, covenants, provisions and conditions of said Lease to be paid, performed and observed by Lessee.

In case of default by Lessee under said Lease, Lessor shall not be required prior to demand on, or payment by, Guarantor to make any demand upon or pursue or exhaust any of its rights or remedies against Lessee with respect to such default and Guarantor shall pay to Lessor any and all amounts due and unpaid by Lessee to Lessor, in like manner as if such amounts constituted direct and primary obligations of Guarantor.

This guaranty agreement made and entered into in the State of Alabama shall inure to the benefit of Lessor, jointly and severally and to the respective legal representatives, heirs, successors and assigns of Lessor, and shall be binding upon Guarantor, its successors and assigns.

IN WITNESS WHEREOF, the undersigned has caused there presents to be executed this 7th day of January, 2022.

________________________

Remco hoytink
Print Name

STATE OF Alabama
COUNTY OF Jefferson

I, the undersigned authority in and for said County, in said State, hereby certify that Remco Hoytink whose name is signed to the foregoing instrument, and who is known to me, acknowledged before me that being informed of the contents of the instrument he executed and delivered the same voluntarily for and as the act of said corporation.

Given under my hand and official seal this the 7th January, 2022.

Notary Public
My Commission expires: MY COMMISSION EXPIRES AUGUST 12, 2022