FILED
2026 Aug-24 PM 03:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**

| | | |
|---|---|---|
| **MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No. 2:25-cv-00659-MHH** |
| **MOBILE FLEET SPECIALISTS OF BIRMINGHAM, INC.; *et al.*** | ) | |
| **Defendants.** | ) | |

**DEFENDANT MOBILE FLEET SPECIALISTS' REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**

COMES NOW Defendant Mobile Fleet Specialists of Birmingham, Inc. ("Mobile Fleet") and files this reply in support of its Motion for Partial Summary Judgment. Plaintiff Mesa Underwriters Specialty Insurance Company's ("MUSIC") Response to the Motion for Partial Summary Judgment ("MUSIC's Response") [Doc. 36] asks the Court to consider the operative Amended Consolidated Complaint and the evidence in the Underlying Action[1] to decide MUSIC's duty to defend. But MUSIC never amended or supplemented its declaratory-judgment complaint to seek relief based on the Amended Consolidated Complaint. Instead, MUSIC asks the Court to treat the Amended Consolidated Complaint as part of a claim that expressly identifies the superseded Consolidated Complaint as the operative pleading and

[1] *See* Motion for Partial Summary Judgment Brief [Doc. 31] at 2.

incorporates that pleading as the basis for relief. The Court should not enlarge MUSIC's claim through summary judgment briefing.

Even if the Court reaches the operative allegations stated in the Amended Consolidated Complaint, MUSIC still cannot obtain the declaration it seeks. The Amended Consolidated Complaint alleges that Mobile Fleet used and maintained the Property[2] for its heavy-truck-repair business and that premises-related failures caused Mr. Westmoreland's[3] fall. The evidence in the Underlying Action independently supports coverage because Mobile Fleet was already operating from the Property, storing its equipment there, and preparing the warehouse for truck-repair operations. Thus, both the Amended Consolidated Complaint and the evidence in the evidence in the Underlying Action trigger MUSIC's duty to defend.

## I. <u>*Berrey* does not authorize MUSIC to obtain judgment on a claim it never pleaded.</u>

MUSIC treats *Allstate Indemnity Co. v. Berrey*, 2016 U.S. Dist. LEXIS 93594 (N.D. Ala. 2016), as resolving the scope-of-pleadings question.[4] *See* MUSIC's Response [Doc. 36] at 4-6. It does not. In *Berrey*, Judge Hopkins held that the filing of an amended complaint in an underlying tort action did not, by itself, moot an

---

2 *See* Mobile Fleet's Response to MUSIC's Motion for Summary Judgment [Doc. 35] at 4.

3 *See* Mobile Fleet's Response to MUSIC's Motion for Summary Judgment [Doc. 35] at 9.

4 MUSIC describes *Berrey* as "this Court's decision," MUSIC's Response [Doc. 36] at 4, but another judge of this District decided that case. Thus, *Berrey* is only persuasive authority. *See McGinley v. Houston*, 361 F.3d 1328, 1331 (11th Cir. 2004) ("The general rule is that a district judge's decision neither binds another district judge nor binds him [or her], although a judge ought to give great weight to his [or her] own prior decisions.").

existing declaratory-judgment action. *Id.* at *27-28. Mobile Fleet does not dispute that a live coverage controversy exists. But that is not the question. Instead, the question is whether MUSIC may obtain summary judgment on a materially different controversy that its pleading never placed before the Court.

That distinction matters. MUSIC's Complaint did not merely refer generally to whatever claims might later be asserted in the Underlying Action. It alleged that the Consolidated Complaint was the operative pleading, attached that pleading, and incorporated it into the requested declaration. *See* Complaint [Doc. 1] ¶ 26; Complaint Ex. 1 [Doc. 1-1]. Presumably, MUSIC did so because "'[w]hether an insurance company owes its insured a duty to provide a defense in proceedings instituted against the insured is determined primarily by the allegations contained in the complaint.'" *Hartford Cas. Ins. Co. v. Merchs. & Farmers Bank*, 928 So. 2d 1006, 1009 (Ala. 2005) (citations omitted). But the Amended Consolidated Complaint later superseded the Consolidated Complaint and added allegations that Mobile Fleet controlled and used the Property for its garage-operations business, leased and maintained the Property for that purpose, and was operating or intended to operate its heavy-truck-repair business there. *See* Mobile Fleet Ex. 5 [Doc. 30-5] ¶¶ 5, 8–9, 14. MUSIC did not supplement its Complaint after those allegations became operative.

MUSIC relies on the Complaint's general references to the "Underlying Actions" and to the "claims made and damages sought" in them. MUSIC's

Response [Doc. 36] at 6–7. Those general allegations do not erase MUSIC's specific identification and incorporation of the then-operative Consolidated Complaint. Nor do they provide notice that MUSIC sought adjudication of materially different allegations that did not exist when it filed suit. If MUSIC wished to extend its claim to later events, Rule 15(d) supplied a straightforward procedure for a supplemental pleading. MUSIC did not use it.

The Eleventh Circuit's summary judgment rule is equally straightforward: "At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a)." *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004). Likewise, "a plaintiff may not amend [its] complaint through argument made in [its] brief" at summary judgment. *Miccosukee Tribe of Indians of Fla. v. United States*, 716 F.3d 535, 559 (11th Cir. 2013); *see also Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006). Attaching the Amended Consolidated Complaint to its Motion for Summary Judgment made the Amended Consolidated Complaint evidence, but it did not amend the claim on which MUSIC seeks judgment.

*Berrey* did not address the issue presented here. The insured in *Berrey* argued that the entire action became moot merely because the underlying complaint was amended. *Berrey*, 2016 U.S. Dist. LEXIS 93594 at *27; *id.* at *27 n.13. Judge Hopkins rejected mootness and then evaluated the amended complaint together with admissible evidence in the underlying tort action. *Id.* at *28-46. Nothing in *Berrey*

indicates that the insurer was attempting to substitute a materially different, unpleaded declaratory claim at summary judgment or that the insured invoked *Gilmour*. *Berrey* merely found that amendment of an underlying complaint does not automatically destroy jurisdiction; it did not excuse an insurer from pleading the operative basis for the relief it requests.

The effect of the amended complaint also differs. *Berrey* compared the original and amended complaints and observed that they contained substantially the same allegations with limited changes concerning ownership and drainage. *Berrey*, 2016 U.S. Dist. LEXIS 93594 at *11-12. Here, the new allegations concern the very coverage issue MUSIC asks the Court to decide: whether Mobile Fleet's use and maintenance of the Property were part of its heavy-truck-repair operations. MUSIC itself characterizes those additions as inserted Policy terms. *See* MUSIC's Response [Doc. 36] at 9. As explained below, those additional allegations trigger MUSIC's duty to defend.

MUSIC's appeal to judicial economy does not change the result. Judicial economy cannot substitute for notice pleading or authorize summary judgment on an unpleaded claim. *See Gilmour*, 382 F.3d at 1315. It also does not authorize a court to amend a plaintiff's claim *sua sponte*. *Miccosukee Tribe*, 716 F.3d at 559 ("And it goes without saying that the court is barred from amending a plaintiff's claim. One reason for barring such amendment is that in *sua sponte* amending a plaintiff's claim on summary judgment, the court may create the impression that it

has become the plaintiff's advocate—or his worst enemy—depending on what the court does with the claim after amending it.”).

MUSIC knew of the Amended Consolidated Complaint for over ten months and could have sought supplementation or amendment of its Complaint. Its decision not to do so does not permit the Court to rewrite its claim now.

## II. **MUSIC’s Article III and discretion arguments address a position that Mobile Fleet did not take.**

Mobile Fleet acknowledged that a live coverage controversy exists. *See* Motion for Partial Summary Judgment Brief [Doc. 31] at 10. It did ***not*** argue that every possible declaratory action concerning the Underlying Action is constitutionally moot. Instead, it argued that the particular declaration MUSIC pleaded—one expressly based on the superseded Consolidated Complaint—would not resolve the parties’ present rights. MUSIC’s repeated reliance on the existence of a general coverage dispute does not answer that narrower point.

The same is true of MUSIC’s discussion of *Wilton* and *Ameritas*. *See* MUSIC’s Response [Doc. 36] at 11-14. Mobile Fleet did not ask the Court to abstain in favor of a parallel state coverage action. It invoked the Court’s discretion because a declaration limited to obsolete allegations would serve no useful purpose and would not clarify the parties’ present legal relations. The Declaratory Judgment Act is not a command to decide relief outside the pleaded claim.

MUSIC’s Response illustrates the problem. To show that declaratory relief would be useful, MUSIC asks the Court to decide the Amended Consolidated

Complaint and new evidence. MUSIC's Response [Doc. 36] at 8-10, 14-15. But that is precisely the controversy MUSIC's Complaint did ***not*** plead. The Court should either enforce the pleaded scope and grant Mobile Fleet's motion or, if it reaches the operative controversy, hold that the allegations and evidence trigger MUSIC's duty to defend.

## III. If the Court reaches the allegations in the Amended Consolidated Complaint, those allegations and the evidence in the Underlying Action trigger MUSIC's duty to defend.

MUSIC devotes much of its response to arguing that the Court should decide the merits under the Amended Consolidated Complaint and the admissible evidence in the Underlying Action. *See* MUSIC's Response [Doc. 36] at 8-10, 14-15. Mobile Fleet thoroughly addressed MUSIC's duty to defend under those sources in its Response to MUSIC's Motion for Summary Judgment [Doc. 35]. When examined under Alabama's duty-to-defend standard, the Amended Consolidated Complaint and the admissible evidence in the Underlying Action both independently support coverage.

### A. MUSIC cannot use extrinsic evidence to negate covered allegations.

MUSIC cites *Berrey* and *Essex Ins. Co. v. Foley*, 2011 U.S. Dist. LEXIS 48940 (S.D. Ala. 2011) for the proposition that the Court should consider both the allegations of the Amended Consolidated Complaint and the evidence in the Underlying Action to determine whether MUSIC has a duty to defend. MUSIC's Response [Doc. 36] at 9-10. Alabama law does not place the Amended Consolidated

Complaint and the evidence in the Underlying Action on equal footing when determining MUSIC's duty to defend. If the operative complaint alleges a covered accident or occurrence, the insurer must defend even if evidence may later show that the claim is not covered. *See Hartford Cas. Ins. Co. v. Merchs. & Farmers Bank*, 928 So. 2d 1006, 1010 (Ala. 2005). Extrinsic evidence may establish coverage when the operative complaint does not, but "'[the Alabama Supreme Court] has never held that, even though the allegations of the complaint ***do*** allege a covered accident or occurrence, the courts may consider evidence outside the allegations to disestablish the duty to defend[.]'" *Id.* (citations omitted, emphasis in the original).

Thus, MUSIC cannot simply disregard allegations in the Amended Consolidated Complaint that independently describe a covered occurrence. It also cannot use Mobile Fleet's discovery response—or its characterization of that response—to erase the Amended Consolidated Complaint's allegations.

### B. The Amended Consolidated Complaint alleges facts, not merely coverage labels.

MUSIC argues that the only material amendment in the Amended Consolidated Complaint was the insertion of Policy terms. MUSIC's Response [Doc. 36] at 9. That description omits the substance. The Amended Consolidated Complaint alleges that Mobile Fleet had control and use of the Property for its garage-operations business for heavy-truck repair. Mobile Fleet Ex. 5 [Doc. 30-5] ¶¶ 5, 8. The Amended Consolidated Complaint alleges that Mobile Fleet leased, controlled, maintained, and improved the Property for that purpose, and that it was

operating or intended to operate its heavy-truck-repair business there. *Id.* at ¶¶ 8–9, 14. Finally, the Amended Consolidated Complaint alleges that Mobile Fleet undertook to control and safely maintain the workplace but failed to protect the roof and skylights, provide fall protection, or warn of dangerous conditions, thereby causing Mr. Westmoreland's fall. *Id.* at ¶¶ 15, 17–19, 21–22, 24–26.

Those are descriptive allegations about the Property, Mobile Fleet's use of it, the purpose of the improvements, and the premises failures alleged to have caused the accident. They are not irreconcilable with the allegation that Mr. Westmoreland was performing tree or roof work. The nature of Mr. Westmoreland's work and the Property's business purpose can both be true. Thus, the rule that descriptive facts control over an inconsistent legal label does not apply. *See Hartford*, 928 So. 2d at 1012 ("We therefore conclude that when the complaint supplies descriptive facts and those facts are irreconcilable with a legal theory, such as 'negligence,' asserted in the complaint, the facts, not the mere assertion of the legal theory, determine an insurer's duty to defend.").

MUSIC also repeats the superseded Consolidated Complaint's description of the Property as a "vacant building." MUSIC's Response [Doc. 36] at 9, 15. The Amended Consolidated Complaint, however, alleges Mobile Fleet's business use of the Property. *See* Mobile Fleet Ex. 5 [Doc. 30-5] ¶¶ 5, 8–9, 14. MUSIC cannot elevate a superseded characterization over the current allegations.

Alabama law recognizes that the allegations relevant to an insurer's duty to defend may change during the underlying litigation. As the Alabama Supreme Court explained:

> Under the present Alabama rules of procedure, it is quite possible that the character of the plaintiffs' claim against [an insured] may change, as Judge Hand noted, even during the course of the trial; and, of course, the plaintiffs' complaint may be amended even after the evidence is in to conform to that evidence. Because that is so, the insurers should be mindful that: It is clear that where a claim potentially may become one which is within the scope of the policy, the insurance company's refusal to defend at the outset of the controversy is a decision it makes at its own peril[.]

*Ladner & Co. v. Southern Guaranty Ins. Co.*, 347 So. 2d 100, 104 (Ala. 1977) (citations and quotation marks omitted).

The Amended Consolidated Complaint presents that circumstance here. Its new allegations potentially bring the claims within the Policy, and MUSIC cannot avoid those operative allegations by relying on the superseded Consolidated Complaint or contrary extrinsic evidence.[5]

### C. <u>MUSIC's reading deletes most of the Policy's definition of "garage operations."</u>

Alabama law requires every insurance contract to be construed according to "the entirety of its terms and conditions." Ala. Code § 27-14-17(a). "The provisions of the policy cannot be read in isolation, but, instead, each provision must be read in

---

5 Or by ignoring the evidence in the Underlying Action that ***confirmed*** the property's business used alleged in the Amended Consolidated Complaint. *See* Mobile Fleet Ex. 9 [Doc. 34-1] at 21:1 – 23:2, 24:2 – 25:19, 69:8 – 70:21; 106:2 – 109:1; 112:15 – 113:9; 114:16 – 115:13; 168:17 – 169:14; Mobile Fleet Ex. 23 [Doc. 34-15] at 30:4-8, 41:13 – 42:6.

context with all other provisions." *Cowart v. GEICO Casualty Co.*, 296 So. 3d 266, 270 (Ala. 2019) (citations and quotation marks omitted). An endorsement supersedes the standard policy language only to the extent the provisions actually conflict. *See Commercial Standard Insurance Co. v. General Trucking Co.*, 423 So. 2d 168, 170 (Ala. 1982).

The Policy defines "garage operations" to include "the ownership, maintenance or use of locations for garage business" and "all operations necessary or incidental to a garage business." MUSIC Ex. C [Doc. 32-3] at 55. The Schedule of Operations identifies the insured business as "Heavy Truck Repair." *Id.* at 13. Read together, those provisions cover bodily injury resulting from Mobile Fleet's maintenance or use of a location for its heavy-truck-repair business and from operations necessary or incidental to that business. In other words, the provisions complement rather than conflict with one another: the Schedule of Operations identifies the insured garage business (i.e., heavy-truck repair) while the Garage Coverage Form defines the covered operations of that business.

Under MUSIC's interpretation, coverage exists only if the activity that caused the injury involved physically repairing a heavy truck. MUSIC's Response [Doc. 36] at 14–15. That reading artificially reduces "garage operations" to hands-on vehicle repair and gives no effect to the definition's separate coverage for maintenance or use of a garage-business location. The Schedule of Operations merely limits the type of garage business insured; it does not delete the location-

based language or redefine "garage operations." At minimum, MUSIC's competing construction creates an ambiguity that must be construed against MUSIC. *Twin City Fire Ins. Co. v. Alfa Mutual Ins. Co.*, 817 So. 2d 687, 695 (Ala. 2001); *see also American States Ins. Co. v. C.F. Halstead Developers, Inc.*, 588 So. 2d 870, 872 (Ala. 1991).

MUSIC cites no decision construing the "garage operations" definition as narrowly as it proposes. *See generally* MUSIC's Response [Doc. 36]. By contrast, *Davis v. Catlin Specialty Ins. Co.*, 80 So. 3d 580, 581–584 (La. Ct. App. 2011), held that materially identical "garage operations" language provided premises coverage even though the injured person was not performing garage work.[6] *See* Mobile Fleet's Response to MUSIC's Motion for Summary Judgment [Doc. 35] at 28-29; *cf. Kinnon v. Universal Underwriters Insurance Co.*, 418 So. 2d 887, 891 (Ala. 1982) ("The root word 'operate,' when used in the context of garage operations, refers to business operations[.]"). That construction supports the conclusion that "garage operations" is not confined to the physical act of repairing a truck.

**D. <u>The admissible evidence in the Underlying Action independently supports coverage.</u>**

Facts outside the operative complaint may establish a duty to defend when the allegations alone are insufficient. *Hartford*, 928 So. 2d at 1010. In this case, even if

[6] *See also Moore v. New Hampshire Ins. Co.*, 444 A.2d 543, 544-546 (N.H. 1982) (construing "necessary or incidental" language in a "garage operations" policy to cover activities beyond just physical vehicle repair).

the allegations in the Amended Consolidated Complaint did not trigger MUSIC's duty to defend, the admissible evidence in the Underlying Action would do so.

Mobile Fleet selected the Property to obtain space needed for its truck-repair operations. *See* Mobile Fleet Ex. 9 [Doc. 34-1] at 21:1 – 23:2. Before the accident, Mobile Fleet was conducting business from the Property, one of its owners spent approximately 75% of his working time there, and Mobile Fleet stored equipment for its operations in the warehouse. *Id.* at 69:8 – 71:18, 106:2 – 109:1, 112:15 – 113:9, 114:16 – 115:13, 168:17 – 169:14; Mobile Fleet Ex. 23 [Doc. 34-15] at 30:4-8, 41:13 – 42:6. The tree removal was the first step in accessing and repairing the roof, replacing skylights, weatherproofing and insulating the warehouse, and continuing the buildout for truck-repair operations. Mobile Fleet Ex. 9 [Doc. 34-1] at 123:20 – 127:20. That evidence supports a reasonable inference that the accident resulted from Mobile Fleet's maintenance and preparation of a location already used for its heavy-truck-repair business, or from an operation necessary or incidental to that business.

MUSIC relies on an earlier interrogatory response stating that Mobile Fleet had not "moved into the building." MUSIC's Response [Doc. 36] at 15. Mobile Fleet's co-owner and corporate representative later clarified the response by explaining that while Mobile Fleet was not yet repairing trucks in the warehouse, Mobile Fleet was using the Property for its heavy truck repair operations. Mobile Fleet Ex. 9 [Doc. 34-1] at 69:8 – 71:18, 106:2 – 109:1, 112:15 – 113:9, 114:16 –

115:13, 123:20 – 127:20, 168:17 – 169:14; *cf.* Mobile Fleet Ex. 23 [Doc. 34-15] at 30:4-8, 41:13 – 42:6. The evidence of Mobile Fleet's use of the Property is unrebutted. While the phrasing of the interrogatory response may create a factual issue, it does ***not*** establish a lack of admissible evidence in the Underlying Action that brings the accident within the Policy's coverage.

MUSIC must defend if ***either*** the operative allegations or admissible evidence in the Underlying Action establishes a covered occurrence. *Hartford*, 928 So. 2d at 1010. Here, both establish a covered occurrence. And even if some theories fall outside the Policy's coverage, MUSIC must at least defend the covered claims. *Tanner v. State Farm Fire & Casualty Co.*, 874 So. 2d 1058, 1064 (Ala. 2003).

## IV. Indemnity should not be decided.

MUSIC argues that its "duties to defend and indemnify rise and fall together," *see* MUSIC's Response [Doc. 36] at 18, but alternatively asks the Court to stay any decision on its duty to indemnify if the Court finds a duty to defend. *Id.* at 16-17. Because the Underlying Action remains pending and Mobile Fleet has not been held liable, adjudicating indemnity now would be premature. *See, e.g., James River Ins. Co. v. Ultratec Special Effects Inc.*, 22 F.4th 1246, 1252 (11th Cir. 2022); *State Farm Fire & Cas. Co. v. GHW, III*, 56 F. Supp. 3d 1210, 1215 (N.D. Ala. 2014). At a minimum, the Court should stay or decline to address indemnity.

## V. <u>The Court should grant Mobile Fleet's motion or otherwise deny MUSIC's requested declaratory relief.</u>

MUSIC's Response does not cure MUSIC's failure to plead a claim concerning the operative Amended Consolidated Complaint. The Court should grant Mobile Fleet's Motion for Partial Summary Judgment and deny declaratory relief concerning MUSIC's duty to defend as presently pleaded. Alternatively, the operative allegations independently establish a covered occurrence and therefore trigger MUSIC's duty to defend. The admissible evidence provides an independent basis for the same conclusion or, at minimum, creates factual issues that foreclose judgment for MUSIC. Finally, the Court should stay or decline to address indemnity while the Underlying Action remains pending.

Respectfully submitted,

*/s/ James E. Murrill, Jr.*
Robert R. Riley, Jr. (ASB-8310-Y75R)
James E. Murrill, Jr. (ASB-4329-A57M)

OF COUNSEL:
**RILEY & JACKSON, P.C.**
3530 Independence Drive
Birmingham, Alabama 35209
(205) 879-5000 *telephone*
(205) 879-5901 *facsimile*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 24, 2026, a copy of the foregoing was electronically filed with the Clerk of the Court using the Pacer system, which sends notification of such filing to the following counsel of record in this cause:

Kenneth W. Boyles, Jr.
Maggie Arellano
PHELPS DUNBAR, LLP
2001 Park Place North, Ste. 700
Suite 1000
Birmingham, AL 35203
kenneth.boyles@phelps.com
maggie.arellano@phelps.com

Keith T Belt, Jr.
William Ryan Myers
BELT, BRUNER & BARNETT PC
880 Montclair Road
Suite 300
Birmingham, AL 35213
keithb@beltlawfirm.com
ryanm@beltlawfirm.com

*/s/ James E. Murrill, Jr.*
OF COUNSEL